RICHARD C. L. MONCURE, AND WALTER P. CONWAY, EXECUTORS OF MARY JAMES, PLAINTIFFS IN ERROR, vs. ANN R. DERMOTT, DEFENDANT IN ERROR.

An action of covenant was instituted by the executors of M. J. upon an obligation executed by A. R. D., under seal, to M. J., by which she agreed to pay a certain note or bond, loaned by M. J. to A. R. D., which had been sold by A. R. D. at a usurious discount and on a usurious contract. The bond or note of M. J. had been given to enable A. R. D. to raise money to pay a debt due by her, and for which the note of M. J. had been previously loaned to her. It was denied by the executors of M. J. that she had any knowledge of the usurious dealing in which the bond or note of M. J. was sold. The executors of M. J. were obliged to pay a large portion of the note or bond, and the action was instituted to recover so much as they had paid. A. R. D. set up the usury between her and the person to whom she had sold the note or bond, as a defence to the suit of the executors of M. J. It was held that the action on the covenant of A. R. D. could be maintained: and that the usurious dealing between A. R. D. and the purchaser of the note or bond of M. J., did not render the covenant of A. R. D., to pay the bond or note, invalid. The Court said the contract between the defendant and the purchaser of the bond, if embracing no other person than themselves, could affect no contract between other parties, previously made; and whether that contract was usurious depended on the intention of the parties to it. If it was made, bona fide, for the sale and purchase of the bond, although at a discount which would insure to the purchaser twelve per cent. a year for the money advanced, it would not be usurious. If, on the other hand, the sale of the bond was a mere cover for avoiding the statutes against usury, and the real intention of the parties was to make a contract for the loan of money, at a higher rate than the legal interest, then the contract was usurious. But to involve M. J. in the usury, and to extend its taint to the covenant of A. R. D., it must be shown by proof, that M. J. executed the bond or note sold, for the purpose of aiding A. R. D. to borrow money at usurious interest, and not to enable A. R. D. to raise money by selling it in the market. When the holder of M. J's. note threatened proceedings on it, it was not necessary that the executors of M. J. should give notice thereof.

No subsequent confirmation of a usurious contract, nor any new contract stipulating to pay the debt, with the usurious interest, will make it valid.

It is the settled law of Virginia that the bona fide purchaser of a bond or note, may take it at any rate or discount, however great, without violating the statute.

ERROR to the Circuit Court of the United States for the county of Washington, in the District of Columbia.

The plaintiffs in error, executors of Mary James, instituted an action of covenant against the defendant, on the following instrument of writing:

Whereas, Mary James has executed her bond or note, dated the 28th day of November, 1828, payable to me on demand, for the sum of twenty-six hundred and twenty dollars, which said bond or note was merely loaned to me for the purpose of raising money upon, and whereas, I have, since the execution of the said bond or note as aforesaid, assigned it to Philip Alexander, of Fredericksburg, for value received of him, I do therefore, hereby bind myself, my heirs, executors, and administrators, to pay and discharge the said bond or note, with all interest that may accrue thereon, when the same shall become due and payable.

Given under my hand and seal, this 12th day of August, 1829.

ANN R. DERMOTT. [SEAL.]

The evidence showed that the note of Mary James, which had been assigned to Philip Alexander, was not fully paid by Ann R. Dermott, and that a large portion of the same remained unpaid at the death of Mary James, who had executed a deed of trust to secure the payment of it; and that her executors, Philip Alexander having ordered the deed of trust to be enforced by the sale of the land and negroes conveyed by the deed, paid the same out of the funds of the estate in their hands.

The defendant alleged usury in the transaction for the loan of the money; and by an agreement between the counsel for the plaintiff and the defendant, usury was allowed to be given in evidence as if specially pleaded.

On the trial of the cause, certain bills of exceptions to the ruling of the Court were filed by the counsel for the plaintiff, and the jury, under the charge of the Court, gave a verdict for the defendant; upon which the Circuit Court gave judgment. The plaintiffs prosecuted this writ of error.

The case, and the whole of the plaintiffs' bills of exceptions, are fully stated in the opinion of the Court.

The case was argued by Mr. Moncure and Mr. Key for the plaintiffs in error : and by Mr. Hoban and Mr. Jones for the defendant.

Mr. Key, for the plaintiffs, contended that admitting usury to have taken place between Ann R. Dermott and Philip Alexander, in the original loan of the money, this could not affect the transaction between Ann R. Dermott and Mary James, the testatrix of the plaintiffs in error. This usury was unknown to Mary James, and the executors have been obliged to pay to Philip Alexander the balance of the debt. To affect the covenant on which suit is brought, it must be shown to have been a contract for a usurious loan of money, or a security for such a loan. Laws of Virginia, statutes of 12 Charles 2, ch. 13. 12 Anne, ch. 16. 13 Eliz. The suit is brought on a contract between Ann R. Dermott and Mary James. It is not a suit to recover money loaned, nor is the obligation given as a security for a loan.

Mary James had loaned her note to the defendant, to enable her to raise money on it, by selling it for her own use. This had been done long before the execution of the obligation on which this suit is brought. The instrument is manifestly a covenant to secure Mary James from liability for the loaned note. The covenant is to discharge the note when due, and she is to be secured from the payment of the note. 14 Johns. Rep. 177. Offley vs. Ward, 1 Lev. 235.

The covenant is not to Alexander, nor is it given to pay usurious interest. Alexander is not a party to it; and it was never delivered to him, nor made for his benefit. Had it been made and delivered to Alexander, it would have been nudum pactum. The defendant was already fully liable to him on her assignment to him of the note of Mary James, and there would therefore have been no consideration for it.

[Moncure et al. vs. Dermott.]

What law avoids such an instrument? Suppose Mary James, instead of lending her note to the defendant, had loaned the money to pay the usurious debt, and had taken a note for its repayment; it is settled that usury in the original loan would be no defence to such a note : nor is it a defence in any case, where a subsequent contract is made with a third party who is a stranger to the usury. 1 Mass. Rep. 138. 9 Mass. Rep. 45. Cro. Eliz. 588. 642. 2 Mad. 279. 4 Johns. Rep. 322. 333. 10 Johns. Rep. 185. 195. Story's Conflict of Laws, 206, 207. John vs. Armstrong, 10 Wheat. 258.

It was said, in the Circuit Court, that the plaintiffs should have given notice of Alexander's claim upon Mary James's note, and should have called on Ann R. Dermott to defend against the claim. But the obligation is exactly otherwise. The defendant should have given the executors of Mary James notice not to pay the note, and set up the usury. 8 Wendall, 458, 459. The plaintiffs were not bound to make defence. They had no proof of usury. The defendant stood by and saw the executors pay the debt, and afterwards set up the usury between herself and Alexander, against the executors; who had paid her debt, ignorant of any defence that could be made to the claim of payment from the estate of Mary James.

Mr. Moncure, for the plaintiffs in error, said :

The three instructions prayed for by the plaintiffs and refused by the Court below, present for the decision of this Court the three following propositions.

1st. That a surety paying a usurious debt without being notified by the principal of the existence of the usury, and instructed on that ground to resist the payment, is entitled to recover from the principal the money paid.

2d. That a surety paying a usurious debt without any knowledge of the usury, or of any other objection to the validity of the debt, and under the belief that the same is bona fide due, is entitled to recover from the principal the money paid : and

3d. That the executors of a surety paying a usurious debt without any knowledge of the usury, and after the principal had waived and abandoned all objection to the validity of the debt, and assented that the same should be considered as valid and legal, are entitled to recover from the principal, the money paid.

The affirmative of these three propositions is maintained by the counsel for the plaintiffs, on the following authorities. Robinson vs. May, Cro. Eliz. 588. Dutton vs. Downham, Fb. 642. Basset and Prowe's case, 2 Leon. 166. Comyn on Usury, 186 and 196. Ford vs. Keith, 1 Mass. 139. Bearce vs. Barstow, 9 Mass. 45. Parker vs. Rochester, 4 John. ch. 332. 1 Tuck. Blac. Com. 379. Merchant vs. Dodgin, 2 M. and Scott, 633. Cuthbert vs. Haley, 8 T. R. 390. Jackson vs. Henry, 10 Johns. 185. Chadbourn vs. Watts, 10 Mass. 121. Stone vs. Ware, 6 Mun. 541. Ellis vs. Warnes, Cro. Jac. 32. De Wolf vs. Johnson, 10 Wheat. 367. Crenshaw's administrator vs. Clarke and others, 5 Leigh, 65. Spangler vs. Snapp, 5 Leigh, 478.

Turner *vs.* Hume, 4 Esp. 11. Scott *vs.* Lewis, 2 Conn. Rep 132. Green *vs.* Kemp, 13 Mass. 515.

The covenant upon which this suit was brought is in effect a covenant of indemnity; and the plaintiffs having paid the supposed usurious debt, without any knowledge or suspicion of the usury, are entitled to recover on the covenant the money paid by them, though they made the payment without suit, and without notice to the defendant. Such would be the case on general principles, but it is especially so here, where the principal had removed from the state, and where payment by the plaintiffs was necessary to save the property of their testatrix from sale under the deed of trust. Douglass *vs.* Clarke, 14 Johns. 177. Chase *vs.* Hinman, 8 Wend. 452. Ken. *vs.* Mitchell, 2 Chit. 487.

The plaintiffs also contend that there is error in the judgment of the Court below, in granting the instruction prayed for by the defendant.

1st. The hypothetical case stated in that instruction is not a case of usury. Usury will not be presumed; and if, upon any rational hypothesis the transaction could have been legal, it will not be presumed to have been usurious. The statute of usury is highly penal in its character, and should not be applied without strong and clear proof of the usury. Crenshaw's administrator *vs.* Clarke and others, 5 Leigh, 65. Whitworth *vs.* Adams, 5 Rand. 404—425. The contract in this case having been made in Virginia, must be governed by the law, and the decisions of that state. It has been there decided that the bona fide purchase of a bond made for sale, at a greater discount than legal interest is not usurious. Hansborough *vs.* Baylor, 2 Mun. 36; also, Taylor *vs.* Bruce, Gil. 42. Whitworth *vs.* Adams, 5 Rand. 333. There is nothing in the facts stated in the defendant's instruction inconsistent with a bona fide purchase of the bond from the defendant. The purchaser may well have supposed that Mary James was indebted to the defendant in a sum equal to, or exceeding the amount of the bond; and that the defendant was willing to sell so much of the debt as would raise the sum which she needed, and no more. Or he may have well supposed, that Mary James, being a maiden aunt of the defendant, and warmly attached to her, had given her the bond which was offered to him for sale. In either case the transaction would have been perfectly legal; and knowledge of it on the part of the purchaser would not have made the purchase usurious.

2d. The Court in giving the instruction, weighed the evidence and decided upon the facts which should have been left exclusively to the jury. 5 Rand. 397, 407. 6 Leigh, 517. 4 Maul. and Selw. 192. 3 Com. Law Rep. 97. Ib. 109. 5 Ib. 417. Where the facts found in a special verdict, or stated hypothetically in an instruction, show a loan or forbearance of money at more than legal interest, the corrupt agreement is an intendment of law, and need not be expressly found or stated; but where the transaction presents itself in

the form of a sale of a bond, or in any other form which may be used as a shift or device to evade the statute, the corrupt intent to evade the statute is a question of fact, which must be left to the jury. The case of Roberts vs. Tremayne, Cro. Jac. 507, is in accordance with this distinction.

Mr. Hoban and Mr. Jones, for the defendant, contended: that as to so much of the plaintiffs' exceptions to the decision of the Circuit Court as goes to the refusal of the instructions to the jury, moved on the part of the plaintiffs, all the said instructions were properly refused, as being erroneous in the general principles of law assumed in them; or, even if correct in their principles, yet they were propounded with such qualifications and adjuncts, as were wholly inadmissible, and vitiated the instructions throughout their entire frame.

As to the instruction finally granted at the instance of the defendant, upon the hypothetical state of facts therein set forth, it is contended, that the facts assumed are fairly deduced from evidence; not only sufficiently pertinent to the conclusions of fact assumed, but going to the clearest proof of those conclusions: that the Circuit Court has, nevertheless, fairly left every fact, and every conclusion of fact, to the free and unbiassed judgment of the jury: that such facts, being found true, do amount, in every circumstance both of act and intent, to technical usury; in both the forms stated by the Court: and that the legal conclusion of usury would follow from such facts found in a special verdict: yet the Court has left all the conclusions and presumptions of usury from the facts, equally as the facts themselves, to the judgment and discretion of the jury.

Mary James was acquainted with the whole transaction for procuring the money from Philip Alexander, and she cannot be excluded from the influence of the law on the subject of usury, by coming forward as a suitor on the obligation of guaranty, given by the defendant in error. The original note, for the payment of which the money was procured from Alexander, was the note of Mary James. She was the debtor on that note, and originally liable for its payment. It was to relieve her from this liability the money was procured by the usurious dealing between the defendant, and Alexander—of all the circumstances she was fully cognizant.

How is the law settled with regard to principal and surety, when the surety is collaterally liable for a usurious contract? It is claimed that notice of the nature of the transaction is not necessary. If the contract was originally usurious, the guarantee is void. Comyn on Usury, 133.

A new contract made by the parties, with a stranger ignorant of the usury, is not affected by it, and is valid. But if the old contract is continued, and is usurious, no recovery can be had. But on a new contract it is different. Comyn on Usury, 196. 1 Mass. 137.

The obligation of the defendant, on which this suit is brought, could have been enforced against her in a Court of Chancery, by

Alexander; it was therefore a direct obligation to sustain a usurious contract.

Mr. Justice M'KINLEY delivered the opinion of the Court:—

This cause is brought before this Court upon a writ of error, to the Circuit Court of Washington county, in the District of Columbia.

The plaintiffs brought suit against the defendant, in the Court below, upon a covenant executed by the defendant as follows: "Whereas Mary James has executed her bond or note, dated the 28th day of November, 1828, payable to me on demand, for the sum of twenty-six hundred and twenty dollars, which said bond or note was merely loaned to me for the purpose of raising money upon; and whereas I have since the execution of said bond or note assigned it to Philip Alexander, of Fredericksburg, for value received of him; I do therefore hereby bind myself, my heirs, executors and administrators, to pay and discharge the said bond or note, with all interest that may accrue thereon, when the same shall become due and payable.   Given under my hand and seal, this 12th day of August, 1829.          ANN R. DERMOTT."  [SEAL.]

To this suit the defendant pleaded non assumpsit, with leave to give usury in evidence.

At the trial it was proved that the testatrix became principal in a bond to Thomas Poultney and Son, of Baltimore, bearing date the 31st day of March, 1826, for the sum of three thousand six hundred and thirty-three dollars; it being for the payment of a debt due by the defendant, who also signed the bond, payable on the 23d day of November, 1828; and that the testatrix executed a deed of trust upon her land and negroes, to secure and save harmless William C. Beale, John Moncure, and Thomas Ledden, who had become sureties to said bond, at the request of the testatrix: and that the reason why she gave her own bond for the debt of the defendant was, because the defendant could not give satisfactory security to the sureties: that in the spring of the year 1828 the defendant applied to John Moncure, to aid her in borrowing money to pay off the bond to Poultney and Son, who informed her that he did not believe that money could be borrowed in Fredericksburg at legal interest; and advised her to procure the note of the testatrix, who was her aunt, and sell it in the market.  Several conversations took place between that time and the next November, between Moncure, acting as agent of the defendant, and Philip Alexander, of Fredericksburg, in relation to the sale of a bond or note of the testatrix; when, finally, Alexander agreed that he would buy the bond, provided he could make at the rate of twelve per centum a year upon his money, and obtain security for its final payment by a deed of trust upon the land and negroes of the testatrix.  While these negotiations were pending, the testatrix addressed a letter to Alexander, dated the 25th of November, 1828, in which she stated that her

niece, the defendant, had informed her that she intended selling and assigning to him the bond of the testatrix for $2880, payable on demand, and proposing, if he would give her time for the payment of the money, she would give a deed of trust upon her land and negroes, to secure its payment. These negotiations were protracted until the money to Poultney and Son was so nearly due that there was not time sufficient to complete the arrangements in relation to the bond and security; and Alexander agreed to advance the sum required, $2340, upon an undertaking, on the part of Moncure and Beale, that they would refund the money to him if the defendant failed to assign the bond, and the testatrix to execute the deed. On the 1st of December, 1828, the defendant assigned to Alexander the bond of the testatrix for twenty-six hundred and twenty dollars; and, on the 10th day of the same month, the testatrix executed the deed of trust, in which it was stipulated that the bond was to be paid at the end of two years, with legal interest.

During all this time the testatrix and the defendant lived together in Virginia, some distance from Fredericksburg. The defendant afterwards removed to Washington, where she resided when this suit was commenced. From the month of April, 1831, to the month of May, 1832, she made several payments to Alexander on the bond; and, by letters to the testatrix, expressed her anxious desire to pay it off, that the testatrix and her property might be released from further responsibility on her account. After the death of the testatrix Alexander put the bond into the hands of the trustee, with directions to sell the trust property, unless, within a reasonable time, the plaintiffs paid the balance due.

The plaintiffs prayed the Court to instruct the jury, that it is not competent for the defendant in this action to deny by plea or otherwise, the validity of the note of 28th November, 1828, recited in the covenant on which this suit is brought, and that she is estopped from setting up in this action any alleged usury, as affecting the validity of said note; that the plaintiffs are entitled to recover in this action the sums which the jury are satisfied from the evidence were paid by the plaintiffs to Philip Alexander, on the bond dated 28th November, 1828; unless the defendant proves to the jury, that before such payments the plaintiffs were notified that the bond of 28th November, 1828, was tainted with usury, and instructed to dispute the same; which the Court refused. And then further prayed the Court to instruct the jury as follows: that if the jury should believe from the evidence, that the note of Mary James to the defendant, assigned by Alexander, dated 28th November, 1828, was made on an usurious agreement entered into between said defendant and said Alexander, but that the plaintiffs had no knowledge of such usury at the time they were called upon to pay the balance due on the note, nor at any time before, and paid the same under the belief that the same was bona fide due, and without any knowledge that there was any objection to the validity of said note; and without any notification or communication from the defendant, then the plaintiffs

2 G 2

[Moncure et al. *vs.* Dermott.]

are entitled to recover; unless the jury should be satisfied from the evidence, that the said Mary James knew of the said usurious agreement, under which the said note was given and assigned as aforesaid: which the Court also refused. And further prayed the Court as follows: that if the jury should believe from the evidence, that the note of Mary James, the defendant, assigned by her to Alexander, dated 28th November, 1828, was made on an usurious agreement, entered into between said defendant and said Alexander, but that the plaintiffs had no knowledge of such usury, at the time they were called upon to pay the balance due on the note, nor at any time before, and paid the same under the belief that the same was bona fide due, and without any knowledge that there was any objection to the validity of said note, and without any notification or communication from the defendant; and if the jury believe from the evidence, the defendant waived and abandoned all objection to the validity of said note, and assented that the same should be considered as a valid and legal obligation, then the plaintiffs are entitled to recover. And it is competent for the jury to infer such waiver and assent, if they shall believe from the evidence that the defendant, after obtaining said money, made payments of interest, as the same became due, and expressed her desire and intention to pay the said note, and her anxiety to save her aunt's property from sale under the said deed of trust; which the Court also refused. To all which refusals by the Court to give the several instructions as prayed, the plaintiffs except.

And the plaintiff's counsel then further prayed the Court as follows; that if the jury believe from the evidence, that there was no loan of money from Alexander to defendant secured by the bond of the 28th November, 1828, but that the said bond was bona fide purchased by said Alexander of defendant, at a discount exceeding the legal rate of interest, the said Alexander not knowing when he purchased said bond, that the same was loaned by Mary James to the defendant solely to raise money on, the transaction is not usurious, and the plaintiffs are entitled to recover in this action the moneys paid by them to Alexander on said bond; and further, if the jury should believe that Philip Alexander, when he paid the money and took the note as aforesaid, intended to buy the said note for the amount given on it, not knowing that the note was made by Miss James to defendant, in order to raise money on it, and did not mean, by disguising the advance under the form of a purchase, to evade the statute of usury, then such purchase was lawful; which prayers the Court gave as prayed, and to which the defendant excepts.

And the defendant's counsel thereupon prayed the Court as follows: if the jury find and believe, from the evidence aforesaid, that for several months before the execution and assignment of the bond or note mentioned and described in the covenant on which the suit is brought, there were such negotiations and propositions pending between said John Moncure, (acting in behalf of defendant,) and

said Philip Alexander, as are mentioned and set forth in said affidavits of Moncure and Alexander, and in the papers and exhibits therein referred to, that the true and genuine nature and object of such negotiations and propositions, and of the successive arrangements and understandings resulting from them, as really contemplated by both parties, were that said Alexander should make an advance of money to defendant, upon a future bond or note of said Mary James, payable to defendant, and by her to be assigned to said Alexander, under the name and form of a sale of such bond or note at a discount, above legal rate of interest; that such discount, from the amount of such bond or note should be so adjusted, as that the difference between the full amount of the bond or note, and the sum advanced on it, should be equivalent to an interest at the rate of twelve per cent. per annum on the sum actually advanced for the time of forbearance, to be given on such bond or note; that all the said preliminary negotiations, propositions, and arrangements, were, just before the execution and assignment of the bond or note referred to in the covenant set forth in the plaintiffs' declaration, (such bond or note, being the same note under seal, or bill obligatory, above given in evidence by plaintiffs, with the said covenant, and annexed to the said original affidavit of said J. Moncure, as aforesaid,) terminated in an arrangement so modifying the before pending propositions and arrangements aforesaid, as that said Alexander should immediately advance the defendant 2340 dollars, and that defendant should assign to him a note or bond thereafter, to be drawn and executed by said Mary James, for such amount as should make the difference between the sum so advanced, and the sum to be ultimately received by him for the principal and interest of such bond or note, equivalent to an interest of twelve per cent. per annum on the sum so advanced, according to the principle on which said Alexander, in his letter, a copy of which is on the record, to said Moncure, insisted that the profits of the transaction should be calculated and secured, and that the payment of such bond or note should be collaterally secured by a deed in trust of the land and slaves of said Mary James. That the said Alexander, in pursuance and execution of such arrangement and understanding, did advance the said 2340 dollars to defendant, or for her use; that the said Mary James, in the pursuance and execution of the same arrangement and understanding on her part, did afterwards, on the 28th November, 1828, execute and deliver the said note under seal, or bill obligatory of that date, and afterwards, on the 10th December, 1828, duly execute and deliver to said J. Moncure, and P. Alexander, the said deed in trust bearing that date, as above given in evidence by defendants, and annexed to the said cross-examination of said Moncure, a copy of which is on the record; and that the defendant, in the pursuance and execution of the said arrangement and understanding, did assign the said bill obligatory to said Alexander, immediately on the execution of the same by said Mary James; that the amount of said securities, and the time with which said Mary James was indulged

by said deed, in trust for payment, were knowingly and designedly calculated, and adjusted by and between said Alexander and said Moncure, in behalf of defendant, so as to produce in the end a yearly interest of twelve per cent. on the sum advanced during such time of indulgence; and that the principal and interest secured by the said instruments, were intended and designed by both parties to amount, and did in fact amount, to greatly more than the sum so advanced with legal interest, for such time of indulgence as aforesaid; and did in fact substantially secure to said Alexander, a yearly interest of twelve per cent. on the sum so advanced by him. Then the jury, if they find such facts as aforesaid satisfactorily proved, and fairly deducible from the evidence aforesaid, may properly infer, from such facts, and fairly presume that the transaction was substantially a loan within the meaning of the statute against usury; notwithstanding it may appear to have been made in the form and name of a sale of the said Mary James's bond or note; and then the jury may, from the same facts and circumstances, if proved and deduced as aforesaid, also properly infer and well presume, that the sum of money deducted and retained by said Alexander, from the nominal amount of said bond or note, was substantially usurious interest under another name, for the forbearance of the money so lent or advanced; which the Court gave as prayed, to which the plaintiffs except; and pray the Court to sign and seal this bill of exceptions, as well as the granting of the said defendant's prayer, as to the refusal to grant the prayer aforesaid of said plaintiffs, which is accordingly done this 24th day of May, 1838. And the said defendant, by her said counsel, having excepted, as aforesaid, to the said instructions given by the Court at the request of the plaintiff as aforesaid, also prays the Court to sign and seal this her bill of exceptions to the said instruction, so given at the request or prayer of the plaintiff, which is also done this 24th May, 1838.

Upon the judgment of the Circuit Court on the several prayers for instruction to the jury, by the plaintiffs and the defendant, these questions arise : 1. Does proof of usury, in the contract between the defendant and Alexander, per se, make void the bond assigned to Alexander, and the covenant, also, upon which the suit in the Court below was founded? 2. If the testatrix had no knowledge of the usurious agreement between the defendant and Alexander, and the plaintiffs were also ignorant, and knew nothing of such usurious agreement, when they were called on to pay the balance due on the bond, and they paid it under the belief that it was a bona fide debt, and without any notice to the contrary from the defendant, were they entitled to recover in the Court below ?

The contract between the defendant and Alexander for the purchase of the bond, if embracing no other party than themselves, could affect no contract between other parties previously made; and whether that contract was usurious depended on the intention of the parties to it. If it was made bona fide, for the sale and purchase of the bond, although at a discount which would insure to Alexan-

der twelve per cent. a year, for the money advanced, it would not be usurious. If, on the other hand, the sale of the bond was a mere cover for the purpose of evading the statute against usury, and the real intention of the parties was to make a contract for the loan of money at a higher rate of interest than six per cent., then the contract was usurious. But to involve the testatrix in the usury, and to extend its taint to the bond, as well as to the assignment, it must have been shown by proof that she executed the bond for the purpose of aiding the defendant to borrow money at usurious interest, and not to enable her to raise money by selling it in the market.

As the third prayer of the plaintiffs is materially different from the first and second, we will examine it first. If the first member of it had been presented alone, it would, in our opinion, have been proper for the Court below to have granted it: but as it was inseparably connected with the latter member, it presented a very different question. The objectionable part is in these words: "And if the jury believe, from the evidence, the defendant waived and abandoned all objection to the validity of said note; and assented that the same should be considered as a valid and legal obligation, then the plaintiffs are entitled to recover; and it is competent for the jury to infer such waiver and assent, if they shall believe from the evidence, that the defendant, after obtaining said money, made payments of interest, as the same became due, and expressed her desire and intention to pay the said note, and her anxiety to save her aunt's property from sale under the said deed of trust."

This reasoning proceeds on the assumption that a bare promise to pay an usurious debt, or a partial payment of it, would take the contract out of the statute against usury. No subsequent confirmation, nor new contract stipulating to pay the debt, with the usurious interest, will make it valid. Notwithstanding, therefore, the defendant may have declared her determination to pay the debt, and did actually pay a part of it, she had, nevertheless, a perfect right, afterwards, to avail herself of the plea of usury; therefore, the Court below did right in refusing the instruction.

The first and second instructions prayed for by the plaintiffs, and that prayed for by the defendant, may well be considered together. Jointly they embrace the whole case, and present the two questions before stated. The facts stated in the prayer of the defendant, if found by the jury, taken alone and unconnected with the facts stated in the prayers of the plaintiffs, would oppose no legal bar to the plaintiffs' action; unless, indeed, an usurious contract between the defendant and Alexander, could impart its usurious taint to the bond assigned, and the covenant sued on. The Court below having decided, by refusing the prayers of the plaintiffs, that knowledge, on the part of the testatrix, of the usurious contract, was not necessary to subject the two contracts between her and the defendant to the taint of usury.

They, therefore, put the case upon the express ground, that proof

of usury in the contract between the defendant and Alexander, did, per se, make void the bond assigned, and the covenant sued on. If the testatrix had no knowledge of the existence of usury in the contract between the defendant and Alexander, the bond which she gave to the defendant, although without valuable consideration, was not usurious. There must be a loan, and the taking of more than legal interest, or the forbearance of payment of a pre-existing debt, upon a contract for illegal interest, to constitute usury. Barclay *vs.* Walmsley, 4 East, 57. The fact of knowledge, in the plaintiff's testatrix, is very material; first, to show whether the bond which she executed to the defendant was usurious; and, secondly, to show whether the contract between the defendant and Alexander was usurious. If the bond was free from usury in its inception, no subsequent transaction between other parties could invalidate it. Nichols *vs.* Fearson and others, 7 Peters' Rep. 106. Although this bond may have been executed without valuable consideration, in the hands of a bona fide purchaser, without notice of that fact, it would be good against the obligor. It is the settled law in Virginia, that the bona fide purchaser of a bond or note may take it at any rate of discount, however great, without violating the statute against usury. Hansborough *vs.* Baylor, 2 Mun. Rep. 36. 5 Rand. 33. If the testatrix was neither a party nor privy to the contract, between the defendant and Alexander, it was a very material fact for the jury to consider when inquiring whether there was usury in the agreement between the defendant and Alexander: because, if the testatrix had no knowledge of the usurious contract between them, it was impossible that she could have been party or privy to it. Suppose the jury had found, specially, that the testatrix was neither party nor privy to the contract between the defendant and Alexander, and that Alexander had no knowledge of the fact that the bond which he purchased from the defendant had been executed by the testatrix without valuable consideration; the contract of assignment would have been entirely free from usury, and the testatrix liable upon the bond. But that liability has never been questioned. Viewing the case in this aspect, the defendant would have had no pretext for pleading usury against the plaintiffs in this cause,

But upon what ground is it that usury is set up by the defendant against her covenant of indemnity? If that covenant had been given to Alexander, and the first contract was usurious, he would have been in no better condition; because the consideration being the same, the taint of usury would have attached to it at once. But the case is very different between the defendant and the testatrix. The latter had lent her note to the defendant, and conveyed her land and negroes to a trustee to secure the payment of it. She was no party to the usury; and she had given a full and valuable consideration to the defendant for the covenant of indemnity. The Circuit Court, by refusing to permit the jury to inquire into the fact of knowledge on the part of the testatrix, in relation to the usury, thereby admitted

her ignorance of that fact. Therefore, as between these parties, the whole transaction was legal, and the covenant free from all taint of usury. Cuthbert and another vs. Haley, 8 Term Rep. 390.

Upon the second question it will only be necessary to examine the point, whether the defendant was bound to give notice to the plaintiffs of her intention to plead the statute against usury in bar of the debt due to Alexander; the other points having been fully examined on the first question stated. It is obvious, from the evidence in the cause, that the defendant commenced the negotiation with Alexander for the sale of the bond of the testatrix, and conducted it to its final conclusion; and that she was bound to know every fact and circumstance connected with the whole case. In Ford vs. Keith, 1 Mass. Rep. 138, the case was of a surety who had paid the debt, knowing at the time that it was founded on an usurious contract. He brought suit against the principal to recover the amount paid, to which he pleaded the usury between him and the payer of the note. Judge Strong, who delivered the opinion of the Court, said: "The defendant says, it is true the money was borrowed for me; I received it, and had the benefit of it; I requested you to become my surety and sign the note, and you have paid the contents; yet as I had a legal right to avoid the note, you shall not recover of me. Will the law permit the defendant to get rid of the present action on such grounds? He presumed it would not. No man is bound to take advantage of a penal law, and avoid a contract which in equity he ought to perform; and nothing could excuse the defendant, but his giving express notice to the plaintiff that he, the defendant, did not mean to pay the note."

The present is a much stronger case for the plaintiffs than the one just quoted. The defendant, as before stated, knew all the facts of the case; she had paid, at different times, parts of the debt; nearly five years had elapsed from the date of the contract till its final payment; there was no evidence that the executors had any knowledge of illegality in the contract; the suit was not brought on the contract said to be tainted with usury, but upon the covenant of the defendant, stipulating to indemnify the testatrix against the payment of the debt, which the plaintiffs had been compelled to pay under these circumstances. She sets up the alleged usury, between her and Alexander, to defeat her bond of indemnity; and insists that she is entitled to the benefit of it, unless the plaintiffs prove that they gave her notice before they paid the debt. That she was bound to give notice of her intended defence has already been shown; and to remove all doubt on these points, we refer to 8 Wend. Rep. 452, to show that she was not entitled to notice.

To permit the defendant to avail herself of the plea of usury, under the circumstances of this case, would be to encourage the grossest fraud and injustice. The plaintiffs paid the balance of the debt to Alexander, in the regular discharge of their duty as executors, without knowledge or notice of the alleged usury. We therefore think that the Circuit Court erred in refusing the first and

second instructions prayed' for by the plaintiffs, and in granting the instructions prayed for by the defendant. Wherefore the judgment of the Circuit Court is reversed, and the cause remanded for further proceedings to be had therein, not inconsistent with this opinion.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington; and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said Circuit Court in this cause be and the same is hereby reversed with costs; and that this cause be and the same is hereby remanded to the said Circuit Court, with directions to award a venire facias de novo, and for further proceedings to be had therein in conformity to the opinion of this Court.