(102 So. 200)

### JONES v. MOORE.   (6 Div. 908.)

(Supreme Court of Alabama.   Nov. 6, 1924. Rehearing Denied Nov. 27, 1924.)

**1. Banks and banking &copy;=270(6,9)—Penalties imposed on national bank for violating state usury law are forfeiture of interest and liability for twice amount of interest; remedy under federal statute exclusive.**

Under Rev. St. U. S. §§ 5197, 5198 (U. S. Comp. St. §§ 9758, 9759), national bank charging or receiving higher rate of interest than allowed by law of state where bank is located, forfeits entire interest, and, if interest has been paid, person making payment may sue for twice amount of interest paid, and this remedy is exclusive.

**2. Banks and banking &copy;=270(2)—Cause of action for interest paid national bank does not accrue until all payments exceed principal.**

Cause of action under Rev. St. U. S. § 5198 (U. S. Comp. St. § 9759), for twice interest paid to national bank does not accrue, and lender may purge transaction of usury, until all payments exceed principal.

**3. Banks and banking &copy;=270(4)—Mere renewal of note not payment cutting off defense of usury under National Banking Act.**

Mere renewal of note by national bank, including therein usurious interest, is not such payment as cuts off defense of usury in action thereon, or limits borrower to his action for penalty for usury paid, under Rev. St. U. S. § 5198 (U. S. Comp. St. § 9759).

**4. Banks and banking &copy;=270(8)—Rule as to effect of part payments on note including usurious interest, as respects penalties under National Banking Act, stated.**

As respects penalties imposed by National Banking Act (Rev. St. U. S. § 5198 [U. S. Comp. St. § 9759]), part payments of note generally, including therein usurious interest, without application thereof by agreement of parties, are not regarded as applied first to payment of interest, but if parties by agreement make such application thereof, it will be treated as if usurious interest had been separately paid, intent of parties being controlling.

**5. Banks and banking &copy;=270(10)—Entire usurious contract not void, but voidable as to interest only.**

Under national banking law and laws of Alabama, entire usurious contract is not void, but is voidable as to interest only.

**6. Bills and notes &copy;=315—Usury &copy;=88—Assignee of usurious nonnegotiable paper takes subject to defenses; renewal binds debtor for full amount.**

Assignee of usurious nonnegotiable paper without notice of usury, who pays its full value, takes subject to all defenses available against payee, but renewal of debt, including usury, binds debtor for full amount.

**7. Usury &copy;=128—Debtor cannot set up usury against assignee induced to pay usurious debt.**

Debtor cannot set up usury against assignee of security induced by him to advance money to pay usurious debt.

**8. Principal and surety &copy;=173—Rights of surety to protection against loss grow out of contract with principal.**

Though surety who pays debt is subrogated to remedies and securities of payee under Code 1907, §§ 5385, 5388, he is not in position of assignee when he enters into obligation, but his right to be protected against loss grows out of contract with principal.

**9. Principal and surety &copy;=185—Surety paying usurious obligation without notice not to do so, held entitled to recover amount paid.**

Where surety pays obligation after maturity without notice from principal not to do so, he is entitled to recover amount paid though he had notice of usury in debt, but any collusion with payee to cut off debtor's right to purge it of usury would place surety in like position with payee.

**10. Usury &copy;=20—Contract not "usurious," if lender receives something of uncertain value for loan, unless palpably in excess of legal interest.**

Contract is not "usurious" where lender receives something of uncertain value for his

---

loan, even though its probable value is greater than legal interest, unless so palpably in excess of legal rate as to show intent to violate usury laws.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Usurious.]

**11. Usury ⊙═20—Where stock given as compensation for loan highly speculative, transaction held not usurious.**

Where stock given as compensation for loan was highly speculative, and without real market value, transaction *held* not usurious.

**12. Evidence ⊙═383(7)—Receipt and contract held to show third party's notes transferred to secure plaintiff's note, and not as payment thereof.**

Receipt and contract reciting that transfer of third party's notes was contribution toward plaintiff's note, that such note and collateral was held as security that third party would pay his notes, that plaintiff's note was to be paid from proceeds of third party's notes, etc., *held* to show that notes were merely transferred to secure plaintiff's note and not as absolute payment thereof.

**13. Pledges ⊙═60—Sale of collateral note held not payment of debt.**

Sale of note held as collateral under conditions whereby holder may and does reclaim it and stands ready to surrender it, is not payment of principal debt; Code 1907, § 3302, not being applicable.

**14. Pledges ⊙═30(5)—Plaintiff took nothing by delay in prosecution of action on note securing plaintiff's note not due to holder's fault.**

Where notes of third party given to defendant to secure plaintiff's note were not paid at maturity, and defendant sued thereon, plaintiff took nothing by delay in prosecuting action not due to defendant's fault.

**15. Appeal and error ⊙═870(5)—Decree on demurrer to cross-bill on which no final decree rendered, held not reviewable on appeal.**

Where there was no final decree on cross-bill, and no appeal was taken from decree on demurrer thereto within 30 days, decree on demurrer was not reviewable on appeal.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill in equity by T. R. Jones against J. D. Moore, for accounting and redemption, and cross-bill by respondent for foreclosure of collaterals. From a decree granting complainant's prayer for an accounting and for redemption upon payment of the balance ascertained to be due to respondent, but adjudging respondent to be entitled to relief—left open for coming in of register's report—and adjudging that no usury affected the transactions, complainant appeals. Affirmed.

The record shows the following agreement entered into by the parties:

"Whereas, **J. D. Moore** has this day purchased from T. R. Jones 30,000 shares of La Dura Consolidated Mines Company stock for the sum of $5,000, payable by his promissory notes maturing Sept. 1, 1912, and in consideration thereof T. R. Jones obligates and binds himself to sell 10,000 shares of the said La Dura Consolidated Mines Company stock above mentioned, for the sum of $5,000 net, to J. D. Moore, and to have this amount in the hands of J. D. Moore on or before August the 15th, 1912, with which to pay the said notes of J. D. Moore. T. R. Jones has further obligated himself in a promissory note, which is herein referred to and made part of this agreement, for the sum of $5,000, dated Feb. 27, 1912, and payable at the First National Bank, Birmingham, Ala., on Oct. 1, 1912.

"When the said T. R. Jones has complied with his obligation to place in the hands of J. D. Moore on or before August the 15th, 1912, the sum of $5,000 herein referred to, then the said note of T. R. Jones herein referred to shall be null and void, otherwise to remain in full effect, and the collateral referred to in said note shall become the property of J. D. Moore as set forth in the note of T. R. Jones herein referred to and made part of this contract.

"When T. R. Jones has complied with his obligation to place in the hands of J. D. Moore on or before August 15th, 1912, the sum of $5,000, then said note of T. R. Jones and the collateral therein referred to shall be returned to T. R. Jones.

"In witness of good faith on the part of each of us we have hereunto set our hands and seals.

"J. D. Moore.
"T. R. Jones.

"Birmingham, Ala., Feb. 28, 1912."

Harsh, Harsh & Harsh, of Birmingham, and Sollie & Sollie, of Ozark, for appellant.

A decree is final, if it settles all the equities, although it remains in fieri for reference or the like. McClurkin v. McClurkin, 206 Ala. 513, 90 So. 917; Clifford v. Montgomery, 202 Ala. 609, 81 So. 551; Plunkett v. Dendy, 197 Ala. 262, 72 So. 525; Bank v. Watters, 201 Ala. 670, 79 So. 242; De Graffenried v. Breitling, 192 Ala. 254, 68 So. 265. A contract for payment of a higher rate of interest than 8 per cent. cannot be enforced, except as to principal; and substantially the same law governs loans by national banks. Code 1907, § 4623; U. S. Rev. Stat. § 5198, U. S. Comp. Stat. 1918, § 9759; 3 R. C. L. 662; First Nat. Bank v. Clark, 161 Ala. 497, 49 So. 807. If Moore knew of the usury in the notes, he was bound thereby, when he paid them after maturity, as if he himself had loaned the money. Loyd v. Pace, 12 Ala. 637; 27 R. C. L. 209; Pritchett v. Mitchell, 17 Kan. 355, 22 Am. Rep. 287, note; Saltmarsh v. P. & M. Bank, 14 Ala. 668; Blue v. First Nat. Bank, 200 Ala. 129, 75 So. 577; Lewis v. Hickman, 200 Ala. 672, 77 So. 46; Compton v. Collins, 197 Ala. 642, 73 So. 334. In determining whether a contract is affected with usury, its substance and effect, not

its form, is material. Uhlfelder v. Carter's Admr, 64 Ala. 527; Wright v. Elliott, 1 Stew. (Ala.) 391; Wright v. Minter, 2 Stew. (Ala.) 453; Matlock v. Mallory, 19 Ala. 694; Ely v. McClung, 4 Port. (Ala.) 128; Miller v. Bates, 35 Ala. 580; Neel v. Clay, 48 Ala. 252; Barr v. Collier, 54 Ala. 39; Eslava v. Crampton, 61 Ala. 507. The transfer by Moore of the Middlebrooks note constituted an election by him of that mode of payment of appellant's note. Cocke v. Chaney, 14 Ala. 65; Ware v. Russell, 57 Ala. 43, 29 Am. Rep. 710; Nabring v. Bank, 58 Ala. 204; Tatum v. C., B. & T. Co., 193 Ala. 120, 69 So. 508, L. R. A. 1916C, 767.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, for appellee.

Payment by a surety of a debt past due entitles him to recover the sum paid, with interest, from the principal, unless the principal notified him not to pay. Code 1907, § 5388; 32 Cyc. 268; Ford v. Keith, 1 Mass. 139, 2 Am. Dec. 4; Jackson v. Jackson, 51 Vt. 253, 31 Am. Rep. 688; Polhill v. Brown, 84 Ga. 338, 10 S. E. 921; Moncure v. Dermott, 13 Pet. 345, 10 L. Ed. 193. The defense of usury against noncommercial paper in the hands of a transferee, who is without notice of the usury, is cut off by the giving of a new security payable to the transferee. Perdue v. Brooks, 85 Ala. 459, 5 So. 126; McCullough v. Mitchell, 64 Ala. 250; 27 R. C. L. 253; 13 A. L. R. 1231, note. To constitute usury, there must be a certainty of receiving more than legal interest. Wright v. McAlexander, 11 Ala. 236; 39 Cyc. 959; Cross v. Hepner, 7 Ind. 359. Commissions and expenses paid to one through whom a loan is secured, but who is not the lender's agent, cannot be computed as increasing interest beyond the legal rate. Miller v. Graham, 196 Ala. 230, 72 So. 87; Ginn v. N. E. Mort. Sec. Co., 92 Ala. 135, 8 So. 388; Eslava v. Crampton, 61 Ala. 507. United States statutes govern usurious loans by National banks. Barnet v. Muncie Nat. Bank, 98 U. S. 555, 25 L. Ed. 212; Slaughter v. First Nat. Bank, 109 Ala. 158, 19 So. 430; Citizens' Nat. Bank v. Gentry, 56 L. R. A. 673, note.

BOULDIN, J. The general purpose of the bill is to redeem certain properties and securities held by respondent as security for debt. To this end an accounting is sought to ascertain the amount of the indebtedness. Among other things, the bill seeks in the accounting to purge the debt of alleged usury therein. One of the matters in which usury is alleged grows out of payments made by respondent as surety for complainant to the First National Bank of Rome, Ga.

In January, 1911, complainant, Jones, desiring to obtain a loan, procured the accommodation indorsement of respondent, Moore, upon a note of $5,000 payable to that bank.

This note, or balance thereon, was renewed several times through a period of some 5 years. Meantime, both parties had made payments thereon. Respondent finally paid and took up the last note. Complainant gave notes to respondent covering payments made by the latter.

It sufficiently appears that respondent signed the renewal notes as surety thereon at the request of complainant; that as late as January 4, 1916, respondent obtained a personal loan through Otto Marx & Co. for $1,500, the proceeds by agreement being paid over in part to complainant and in part to the bank, the complainant giving to respondent his personal note with collateral as security therefor. On the same date a renewal note was given by complainant covering the payments theretofore made to the bank by respondent.

It is alleged that the original note was discounted by the bank at a usurious rate of interest, that usury entered into the several renewals to the bank, that respondent, knowing these facts, paid the debt, and the usury so paid is included in the notes now held by respondent.

Issues of law and of fact are raised involving the right of the surety to reimbursement upon payment of a debt infected with usury. Is the claim of the surety, who has paid the debt according to its terms, subject to the defense of usury? This direct question does not appear to have been decided in Alabama.

[1] It may be noted, first, that the transactions here were with a national bank. The lawful rate of interest allowed a national banking association is fixed by the law of the state where located. U. S. Revised Statutes, § 5197 (U. S. Comp. St. § 9758). The contract rate in the state of Georgia is shown to have been 8 per cent. per annum. The penalties imposed upon a national bank for charging or receiving a higher rate than allowed by the law of the state where located are fixed by the federal banking law. U. S. Rev. Stat. § 5198 (U. S. Comp. St. § 9759); Barnet v. Muncie Nat. Bk., 98 U. S. 555, 25 L. Ed. 212; Florence Railroad & Imp. Co. v. Chase Nat. Bk., 106 Ala. 364, 17 So. 720. These penalties are of two kinds: First. For contracting a usurious loan. In a suit upon the note or obligation knowingly discounted at a usurious rate or otherwise infected with an agreement to pay usury, the penalty is a forfeiture of the entire interest. Second. When the usurious interest has been actually paid the person making payment may, by action of debt brought within two years thereafter, recover twice the amount of interest so paid.

This latter penalty is exclusive as to interest actually paid. So, in an action upon the note, whether the original or the last of several renewals, the maker cannot, by plea

of usury, have such usurious interest theretofore paid, applied in reduction of the principal of the debt. Driesbach v. National Bank, 104 U. S. 52, 26 L. Ed. 658; Stephens v. Monongahela Bank, 111 U. S. 197, 4 S. Ct. 336, 28 L. Ed. 399; Carter v. Carusi, 112 U. S. 478, 5 S. Ct. 281, 28 L. Ed. 820; Talbot v. National Bank, 185 U. S. 172, 22 S. Ct. 612, 46 L. Ed. 857; National Bank v. Denson, 115 Ala. 650, 22 So. 518; National Bank v. Clark, 161 Ala. 497, 49 So. 807.

[2] It is held that the cause of action to recover the penalty for interest actually paid may not accrue at the time of payment. Until all payments made exceed the principal sum loaned, the lender is still in position to purge the transaction of usury. So, it is held the 2-year statute of limitations does not begin to run until the lender has received an amount in excess of the principal sum loaned, or has taken judgment upon thé demand. McBroom v. Scottish Co., 153 U. S. 318, 14 S. Ct. 852, 38 L. Ed. 729; National Bank v. Denson, 115 Ala. 662, 22 So. 518.

[3, 4] Mere renewal of the note from time to time, including therein the usurious interest accrued or contracted, is not such payment as to cut off a defense of usury in an action thereon, and limit the borrower to his action for the penalty imposed for usury paid. National Bank v. Lasater, 196 U. S. 115, 25 S. Ct. 206, 49 L. Ed. 408; Brown v. National Bank, 169 U. S. 416, 18 S. Ct. 390, 42 L. Ed. 801; 7 C. J. 826, 827.

Part payments made generally upon a note including therein usurious interest, without application of such payments by agreement of parties, are not regarded in law as applied first to the payment of the interest in dealing with the penalties imposed by the national Bank Act; but if at the time, or upon a renewal and giving a note for the balance, the parties by agreement make application of payments first to the accrued interest, it will be treated as if the usurious interest had been separately paid. The intent of the parties is of controlling importance in dealing with these penalties imposed by the national bank law. 7 C. J. 827.

The pertinency of these rules in dealing with the question of the surety's right to indemnity for payments made by him appears to grow out of the facts of the case before us. It appears the original paper was discounted by the principal; that from time to time he made payments and negotiated the several renewals, inviting the surety to execute them. There is an issue of fact as to whether the surety was informed of the alleged usurious rates being charged by the bank. It is further claimed by respondent that he had no knowledge of the rate of interest allowable under the laws of Georgia. If we find under the evidence that the surety had notice of the usurious discounts, and that he was chargeable with notice of the law

of the contracts he was making, it seems to us the principal owed him some duty to advise him whether the usurious interest had been paid or was still represented in the renewal notes. Otherwise the surety would be charged with the burden, when called upon for payment, to defend against usury by setting up matters not known to him, but in the breasts of the payee and the principal whose debt he is asked to pay.

[5] The right of a surety to recover of his principal usurious interest paid has in some cases turned on the terms of the usury statutes, whether usury renders the contract void or merely voidable. For present purposes it will suffice to note that, under the national banking law, the entire contract is not rendered void, but may be avoided as to the interest merely. In this regard the penalty is the same as in Alabama. National Bank v. Clark, 161 Ala. 497, 49 So. 807; McBroom v. Scottish Co., 153 U. S. 318, 14 S. Ct. 852, 38 L. Ed. 729; Oates v. National Bank, 100 U. S. 239, 25 L. Ed. 580. Usury laws are for the protection of the borrower against the greed of the lender. The corrupt intent to profit by the illegal charge is at the basis of these laws. Their penalties are not aimed at those who derive nothing for themselves, and are not in privity with the usurer.

[6, 7] Thus, it is settled in this state that the assignee of usurious paper, not commercial, without notice of the usury, though he pays full value, takes it subject to all defenses available against the payee. But a renewal of the debt to him, including the usury therein, binds the debtor for the full amount. McCullough v. Mitchell, 64 Ala. 250; Mitchell v. McCullough, 59 Ala. 179. Again, if the debtor induces a third person to advance money to pay the usurious debt, and take an assignment of the security, he cannot set up usury against the assignee. Perdue v. Brooks, 85 Ala. 459, 5 So. 126; May v. Folsom, 113 Ala. 198, 20 So. 984.

In the early case of Ford v. Keith, 1 Mass. 139, 2 Am. Dec. 4, an action by the surety against the principal, commenting on the defense of usury, the court said:

"Then as to the notice to the plaintiff, subsequent to the contract, and before he paid the contents of the note; what is the defense? The defendant says, 'It is true the money was borrowed for me. I received it, and had the benefit of it. I requested you to become my surety and sign the note, and you have paid the contents; yet, as I had a legal right to avoid the note, you shall not recover of me.' Will the law permit the defendant to get rid of the present action on such grounds? He presumed it would not. No man is bound to take advantage of a penal law, and avoid a contract which he ought in equity to perform. The plaintiff was under no obligation to dispute the payment of the note which he had given; and nothing could have excused the defendant but his giving express notice to the plaintiff, that

he (the defendant) himself did not mean to pay the contents of the note, and forbidding the plaintiff to do it."

This case is cited and quoted from in Moncure v. Dermott, 13 Pet. 345, 10 L. Ed. 193.

In Jackson v. Jackson, 51 Vt. 253, 31 Am. Rep. 688, the headnote reads:

"One who becomes a surety on a note, at the request of the principal, and with him agrees to pay usurious interest thereon, and who pays the note after maturity, with such interest, may recover of the principal the money he so pays."

In the opinion the court said:

"This is the contract which the plaintiff entered into at the request and for the benefit of the defendant. The defendant never relieved him from it, nor notified him that he did not wish him to abide by it. When, therefore, the plaintiff paid the holder of the note his half, with ten per cent. interest thereon, he paid it in fulfillment of the contract which the defendant had requested him to enter into as his surety, and so paid it at the defendant's request. It being paid at the defendant's request, the fact that the excess above 6 per cent. was usurious, and for that reason its collection could not have been legally enforced, can make no difference."

[8] In Polhill v. Brown, 84 Ga. 338, 343, 10 S. E. 921, the court approved an instruction to the effect that if the surety paid the debt upon which he was bound, without notice from the principal not to pay the same, he had a right to pay it, notwithstanding there was usury in the debt; and that the principal would be bound to pay him the amount of money he thus paid. We think the principle of these decisions is sound. A surety does not stand in the position of an assignee when he enters into his obligation. His rights grow out of his contract with the principal— the right to be protected against loss. True, when he pays the debt, he is subrogated to all the remedies and securities of the payee in like manner as a purchaser of the debt. Code 1907, § 5385. This is for the protection of the surety.

"Payment by a surety or indorser of a debt past due entitles him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of the principal." Code 1907, § 5388.

[9] A surety is under promise to meet his obligation. He makes the promise at the request of the principal and for his accommodation. A request to make a promise is a request to meet it. His position is not different, in principle, from that of an outsider who, on request of the debtor, pays or furnishes the money to pay his usurious debt. The principal debtor is not bound to plead usury. To require the surety so to do of his own motion, is to place on him a greater obligation to his principal than the latter assumes himself.

We approve the rule that where a surety pays the obligation according to its terms, and after maturity, without notice from the principal not to do so—without a withdrawal of his standing request to pay it—the surety is entitled to recover the full amount so paid, whether he had or had not notice of usury in the debt. Of course, the surety should maintain an attitude of loyalty to his principal. Any collusion with the payee with a view to cut off the debtor's right to purge it of usury would place the surety in the like position with the payee.

Another item of debt involved is evidenced by a note of $5,000 executed by Jones to Moore of date February 28, 1912, due October 1, 1912. This transaction is shown by a contemporaneous agreement in writing, appearing in the statement of the case. The substance and effect of the agreement is: Moore purchased from Jones 30,000 shares (par value $1 each) of stock of the La Dura Consolidated Mines Company, a corporation in which both parties were interested. In payment for this stock, Moore gave Jones his negotiable notes for $5,000 due September 1, 1912; Jones obligated himself, as agent for Moore, to sell 10,000 shares of the stock for $5,000, and turn in that amount to Moore by August 15, 1912, with which to pay off Moore's notes due September 1; Jones further obligated himself by the promissory note first above mentioned; upon compliance with Jones' obligation to place $5,000 in Moore's hands by August 15th, the note of Jones to Moore should be surrendered, otherwise to remain in force. Jones discounted Moore's notes as contemplated, but failed to sell the 10,000 shares of stock or turn in $5,000 to Moore. Moore paid to the indorsees the notes made by him, and still holds Jones' $5,000 note. Two questions, one of usury in the transaction, and the other of payment, are presented for review.

Complainant alleges the transaction began in negotiations for a loan; that for such purpose Moore's notes were issued to him; that the stock, greatly exceeding in value the lawful interest, was given as compensation for the loan, and that it took the form of a sale as an evasion of the usury laws. Respondent alleges that complainant suggested the transaction as a sale of stock; that it was of no substantial value; that the transaction was not usurious.

In solving this question in the light of voluminous evidence, we give first place to the written agreement, the chosen memorial of the parties to express their purpose. It is clear that Moore was, in all events, to be repaid the full amount represented by the notes he issued to Jones for his use. The contract clearly imports that Jones was expected to discount these notes to obtain mon-

ey. Jones was to pay by the sale of stock, if he could, and, if not, was to pay his note. In one event, Moore was to get 20,000 shares of stock for the use of his notes in lieu of money from February 28th to August 15th, and also get the use of $5,000 for 16 days awaiting the maturity of his notes in the hands of indorsees. In the event of no sale of stock, Moore was to have 30,000 shares of stock for the use of his notes from February 28th to October 1st, when his note on Jones matured.

This was an Alabama transaction. Our statute provides:

"All contracts for the payment of interest upon the loan or forbearance of goods, money, things in action, or upon any contract whatever, at a higher rate than is prescribed in this chapter, are usurious, and cannot be enforced either at law or in equity, except as to the principal." Code 1907, § 4623.

Again, our statutes recognize negotiable notes wherein the maker lends his name to another. But for the stock transaction here, Moore would have been an "accommodation party." Code 1907, § 4984. Taken as a whole, the transaction has all the earmarks of a loan within our usury statutes.

[10] Does the stock given as a present consideration for the loan, render the note in suit usurious?

"Where the lender is to receive something else than money for his loan, as property or services, the value of such profit being necessarily uncertain, the contract is not usurious, even though the probable value is greater than legal interest, unless the consideration so given is so palpably in excess of the certain profit allowed by law as to show a corrupt intent to violate the usury laws." 39 Cyc. 959; Wright v. McAlexander, 11 Ala. 236; Rapier v. Gulf City Paper Co., 77 Ala. 126.

[11] A careful study of this record does not enable us to fix any definite value on the stock given as compensation for this loan. To review the evidence would be useless. Suffice to say La Dura Consolidated Mines Company was capitalized at $5,000,-000. Back of this stock were mining properties in the state of Chihuahua, Mexico. Developments had advanced little beyond the prospecting stage. It was not a going concern. It was in process of promotion. Sales of stock were necessary to development. Complainant, Jones, was an active sales agent. He owned large holdings of stock, and sold but little. While the evidence of the latent values of the mining properties runs into the millions, the financial statement of January 1, 1914, showed liquid assets, including bills receivable and interest thereon, $16,330; bills payable were $28,-427.47.

Giving due weight to the evidence of value, including the optimistic statement of respondent about that time, the fact remains that the value of stock was highly speculative. It had no market value in the real sense; its moving depended upon the activities of a sales organization. We are convinced respondent hoped to make a good profit out of the deal, but it was only a hope. Under the rule in such cases, we cannot say that the stock had such real value as to indicate a corrupt intent to evade the usury laws. Neither can it be said the parties had in mind the framing up of a deal with such intent.

The complainant has failed to meet the burden of proof required to sustain his averments of usury in any of the transactions set up in the bill. There was no error in the court's decree thereon.

[12] Another issue is payment or discharge of the $5,000 note above discussed. This issue grows out of a sale or transfer of certain notes on W. T. Middlebrooks, of Dothan, Ala. This transaction was evidenced by a paper, a receipt and contract in one, signed by both parties, and dated Birmingham, Ala., Dec. 31, 1912, as follows:

"Received of T. R. Jones, 10 notes made by W. T. Middlebrooks of Dothan, Ala., for $500 each, dated December 21, 1912, and maturing on October 21, 1913; three November 21, 1913, three December 21, 1913, and three January 21, 1914; all bearing interest at 8 per cent. per annum which have been delivered to me, contributing toward an obligation due to give me cash on August 15, 1912. And when these notes are fully paid, then T. R. Jones will be due to have his note for $5,000 returned to him. This note is now held as surety that W. T. Middlebrooks will pay his notes, which are also secured by collateral now in the hands of the First National Bank of Rome, Ga., and when that note has been paid, this collateral to be held by me until the notes of W. T. Middlebrooks have been paid.

"The note of T. R. Jones, referred to above, is dated February 27, 1912, and maturing October 1, 1912. The said Jones is to pay said note from the proceeds of notes of Middlebrooks, provided they are collected as expected, otherwise, the note of T. R. Jones binding until J. D. Moore has been made whole for the $5,000 required to take up his own notes in exchange, of which this note and obligation was given; and the said Jones agrees to reimburse the said J. D. Moore for all the interest he has to pay in excess of the interest collected from the Middlebrooks notes, while carrying this loan."

It is alleged in the bill that there was no consideration for this agreement; that respondent purchased the Middlebrooks notes in satisfaction of Jones' note, and, after the transaction was complete, this agreement was made as a gratuitous undertaking. This averment is not sustained by the evidence. Mr. Jones testifies that at the time of the negotiation and agreement in the forenoon, it was agreed that the details should be put in writing, and the same afternoon the written agreement was signed. Until then the

matter was in fieri. The written agreement was the completion of the deal, and must be looked to for its terms.

In construing this agreement, all its provisions in connection with the subject-matter referred to must be considered. It recites first that the Middlebrooks notes were received as "contributing toward an obligation due to give me cash on August 15, 1912." This imports that the original debt or obligation arose from the original contract of February 28, 1912, for which the $5,000 note was then given as further security. It then recites that this $5,000 note and the collateral thereon "is now held as surety that W. T. Middlebrooks will pay his notes." Again, it is recited that Jones is to pay the $5,000 note from the proceeds of the Middlebrooks notes, also the accrued interest to the maturity of the Middlebrooks notes, and the $5,000 note shall remain binding until Jones has been made whole on the original transaction. It appears both the Middlebrooks notes and the Jones note are made security for the original demand; that the Jones note is made subordinate to the Middlebrooks notes, its maturity postponed until that of the Middlebrooks notes, and stands in a sense as a guaranty of the payment of the Middlebrooks notes. We are clear to the conclusion that the Middlebrooks notes were not at the time transferred in absolute payment of the $5,000 note, nor the original debt secured thereby.

Subsequent dealings with the Middlebrooks notes are set up with the view to charge the Middlebrooks notes to Moore as payment; and by amendment is asked to account for them as for a conversion. These Middlebrooks notes were negotiable, indorsed by Jones in blank, and delivered to Moore at the time; Moore indorsed them before maturity, and for value, to Moore-Handley Hardware Company, a corporation of which he was president; after maturity Moore-Handley Hardware Company, with the approval of both Moore and Jones, instituted suits thereon at Dothan, Alabama, which are still pending; Jones has actively assisted in the prosecution of these suits. It appears the Middlebrooks notes were given for stock sold him by Jones, that he is an indorser thereon as well as under the contractual relation to Moore above set out. Moore, examined as a witness in the Middlebrooks suits, testified in effect that he purchased the notes in payment of Jones' debt to him; that Moore-Handley Hardware Company were the absolute owners in due course. Thereafter, Moore, as indorser to Moore-Handley Hardware Company, paid and took up the Middlebrooks notes and has them ready to be surrendered upon payment of the demand to him. The record does not establish the view that Jones had knowledge of and assented to the transfer of the notes by Moore to Moore-Handley Hardware Company at the time; but it is clear that he derived such knowledge soon thereafter, made no objection, made no demand for the surrender of his $5,000 note nor securities. So far as material to the issues, we must find from all the relations between Jones and Moore at the time, their subsequent dealings, including many accommodations by Moore, and the facts as a whole, that Jones assented to or ratified the sale of these Middlebrooks notes without prejudice to Moore's claims against him.

[13] Prior to 1883 the transfer of paper held as collateral without a transfer of the debt secured thereby, thus placing the collateral where it could not be surrendered on payment of the debt, operated as payment to the face value of the notes so transferred. By the Act of 1883, Code of 1907, § 3302, it is provided that such assignment shall operate, as between the parties, as a relinquishment of the collateral and reinvestment of title in the pledgor. It is admitted in appellant's brief this statute has no application here. The rule is general that a sale of a note held as collateral under conditions in which the holder may and does reclaim it, and stands ready to surrender it, will not operate as payment. This rule is recognized in our own cases cited by appellant. Ware v. Russell, 57 Ala. 43, 29 Am. Rep. 710; Cocke v. Chaney, 14 Ala. 65; 30 Cyc. 1203; 21 R. C. L. p. 74, § 73, and authorities in notes.

Moore, as indorser of the Middlebrooks notes, had the right and owed the duty to take them up, when not paid at maturity, the event upon which Jones' note was to remain bound. Moreover, Jones' indorsement on the Middlebrooks notes still held him for the same debt, and he would reap no substantial advantage by claiming his $5,000 note. This was a further inducement to allow all matters between him and Moore to remain in statu quo until the Middlebrooks litigation was determined.

It appears this suit was provoked not by these dealings but by Moore's activities in seeking to collect his long standing demands, and especially his ill advised refusal to credit Jones with the royalties on the Weathers properties, and to recognize his right of redemption therein. Moore's testimony in the Middlebrooks suit, in which he and Jones had a common interest, and intended to establish the position of the parties as holders in due course, will not be considered as any modification or change of the relations between Moore and Jones then known to both of them.

[14] Appellant can take nothing by the alleged want of diligence in prosecuting to a successful conclusion the Middlebrooks suits. It does not sufficiently appear that delays have been due to the fault of respondent.

Touching the cross-bill filed by respondent, the decree appealed from merely recites:

"Seventh. That respondent is entitled to relief on his cross-bill but that the form and extent of such relief are left open to be determined after the coming in of the register's report stating the account between the parties as hereinafter provided."

[15] This is not a final decree on the cross-bill. It settles no particular equities litigated therein, but leaves both the form and extent of relief to be yet determined. It could be considered no more than an announcement of the court's opinion. There being no final decree on the cross-bill, and no appeal being taken from decree on demurrer thereto within 30 days thereafter, we cannot review the decree on démurrer.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.