ALLISON *et al.* V. BARRETT.

1. PRACTICE: AMENDMENT: ERROR WITHOUT PREJUDICE. When the plaintiff, after the testimony and arguments were closed, asked leave to amend his petition, so as to have it conform more fully with the testimony, which was refused by the Court, but the case was submitted to the jury, upon the theory that the proposed amendment was immaterial, and the plaintiff had the full benefit of the facts, without amendment, it was *held* that the plaintiff was not prejudiced, and the refusal did not constitute sufficient ground for reversal.

2. USURY: ESTOPPEL. A promise made by the maker of a promissory note after indorsement, to the indorser, to pay the same, does not estop him from setting up usury as a defense to an action thereon by such indorsee.

3. PROMISSORY NOTE: ASSIGNMENT. When the payee of a promissory note assigned the same while it was in the hands of his agent, and gave an order to the assignee, drawn on the agent, directing the latter to deliver the same to the former, but no transfer was indorsed on the note, it was *held* that the assignee could maintain an action thereon in his own name.

4. PROMISSORY NOTE: TRANSFER: NOTICE. The valid transfer of a promissory note, with notice to the maker, imposes upon the latter an equitable obligation to pay the assignee; and though not sufficient to support an implied assumpsit, upon which an action could be maintained, is a sufficient consideration to support an express promise.

5. SAME: LEVY UPON. The sale of a promissory note under execution transfers to the purchaser only the interest of the execution defendant therein at the time of the levy of the execution thereon.

*Appeal from Dubuque District Court.*

TUESDAY, JUNE 7.

PLAINTIFFS were employed by one Pendergast to defend him for the crime of murder. The said P. held a note against defendant, which plaintiffs claim that he orally, and without any indorsement in writing, sold and delivered to them, in consideration of their services in said case rendered and to be rendered. They also claim that defendant, when advised by them of this sale, promised to pay them said note, and agreed that he would not pay it to any one else. The note was not in the possession of the said

P. at the time of the alleged sale, but in that of his agent. It further appears that one Clancy had recovered, prior to the alleged transfer, a judgment against said Pendergast; that an execution issued thereon, which was levied upon the said note; that the officer reduced it to his possession, and sold it, after due advertisement, to one King, the attorney of Clancy, who afterwards received payment therefor from said Barrett. The levy was made after the sale of the note to plaintiffs, but probably before defendant had notice thereof. Before the sale to King, and payment of the note, they both had knowledge of plaintiffs' claim. Plaintiffs now seek to recover against Barrett the amount of said note. Further facts will appear in the opinion. Trial and verdict for defendant, and plaintiffs appeal.

*Allison & Crane* and *Harvey* for the appellants.

*B. W. Poor* for the appellee.

WRIGHT, C. J.—I. Appellants make the point, that the Court erred in refusing to allow them to amend their petition, after the testimony and arguments had closed, so as to have it conform, more fully, with the facts as developed by the testimony. Upon this subject, it is sufficient to say, that the Court submitted the case to the jury, upon the theory that the proposed amendment was entirely immaterial, and that plaintiffs had the benefit of all the facts, to the same extent as though said amendment had been allowed. Under such circumstances, there was no prejudice resulting from the refusal complained of, and hence no cause for reversal; and as the case must be reversed upon another ground, plaintiffs will have ample opportunity to make the proposed amendment, if they shall deem it necessary.

II. Among other defenses, the defendant plead usury, which plea being admitted, the Court instructed the jury,

that if they found for plaintiffs, they would find for the amount of the principal unpaid, without interest. Plaintiffs now insist that a demurrer to this plea should have been sustained, and that this instruction was erroneous, for the reason that the defense could not avail against an action brought by them upon defendant's promise to pay the note.

It will be observed, that plaintiffs purchased the note prior to the alleged promise of defendant to pay, and that the doctrine of estoppel, therefore, has no application to the case. They did not take the note upon the faith of any promise or act of defendant; why, then, should not the defense of usury avail? Barrett's promise, under the circumstances, should not consistently be held to increase his liability beyond what it was, to Pendergast. Plaintiffs parted with nothing upon the strength of the promise, and should stand in no better position than the party originally holding the note. The promise must be construed to mean that he would pay what he was legally owing, or that for which he was legally bound, and not to change the character and extent of his undertaking.

The cases referred to by plaintiffs do not sustain them, as a reference to some of them will sufficiently demonstrate. Thus in *Jackson* v. *Henry*, 10 Johns., 185, the question was, whether a *bona fide* purchaser, without notice, under a sale duly made, pursuant to the statute, by virtue of a power of attorney contained in a mortgage, was affected by usury in the original debt, for which the bond and mortgage were given. And it is held, very consistently, that he was not. But that is far from being this case. So in *Bearce* v. *Barstow*, 9 Mass., 45, it seems that A. owed B. a sum of money, and B. owed C. an account on which he had received usurious interest, and an agreement was made that A. should give to C. a promissory note for the sum due from B. to C., including the usurious interest; A. being discharged of so much of his debt to B. Under such circumstances, it

was held, that the note given by A. to C. was not void by the statute against usury. And clearly this was right, for there was no usury between A. and C. By this arrange. ment, A. made himself the debtor of C. instead of B., and the illegality of the transaction between B. and C. was to him a matter of no kind of importance. In the case before us, however, Barrett stands in the place of B. and not A.; and his promise is not to pay the debt of his creditor, which was usurious, but his own debt, which is thus tainted.

The case of *Chadbourn* v. *Watts*, 10 Mass., 121, was where a note was given, with an agreement to pay illegal interest. After several payments of interest, at the rate agreed, and part of the principal, a new note was given for the balance, in which lawful interest only was reserved. This second note remaining unpaid in part, was canceled, and a third note given for the balance. This latter note was indorsed, and in an action by the indorsee it was held, that the promisor could not avail himself of the defense of usury. If that case was applicable to the one now before us, its correctness under our statute, and in the light of the decisions of this court, would certainly, to say the least of it, be very doubt-ful. *Campbell* v. *McHarg*, 9 Iowa, 354, and cases following it. But plaintiffs are not new and innocent parties introduced into a substituted security, and as a consequence, they do not fall within the rule stated in 2 Pars., 397, and the cases there cited in note "A.," including the case in 10 Johns., *supra*, and others referred to by appellant's counsel.

But the material questions relate to the rights of plain-tiffs and King, the purchaser of the note under the execu-tion sale, and the further inquiry as to how far defendant is protected by the payment of the note to King, the holder of the same.

The right of plaintiffs to maintain the action in their own names is recognized throughout the instructions given to the jury. The note was not in the possession of Pen-

dergast at the time of the sale, nor was it indorsed, but the testimony tends to show that he sold the same, and made his order to his agent, directing its delivery to plaintiffs. There was also testimony proper to go to the jury, tending to show that defendant promised plaintiffs to pay them the note, of all which King, for himself, and as the agent of Clancy, had notice before the sale and purchase of the note under the execution, if not before the levy. As to the right of plaintiffs to maintain the action in their own name, under such circumstances, we entertain no doubt. Though the note was negotiable upon its face, yet as it was not indorsed, it was but a chose in action, and the alleged promise existing, the right of action, in the present form, was complete. The verbal transfer, with notice thereof to Barrett, imposed upon him an equitable obligation to pay the money to the assignees, and though not sufficient to support an implied *assumpsit*, it is a good consideration for an express promise; and if this was established, the action could be maintained. *Crocker* v. *Whitney*, 10 Mass., 316. So in the subsequent case of *Mowry* v. *Todd*, 12 Id., 281, PARKER, C. J., says that such a transaction "amounts to the substitution of one creditor for another, by the consent of the two creditors and the debtor; and an action may be maintained by such assignee in his own name, founded on the assignment, and the express promise of the debtor to pay him." And see 1 Parsons on Cont., 195, and cases there cited.

Recognizing this rule, the court below, nevertheless, held, in substance, and so charged the jury, that if the note was levied upon under the Clancy execution, before defendant and Clancy had notice of the sale to plaintiffs, he (defendant) would not be liable in this action, though they may have had full and ample notice of such transfer before the sale under the execution, and hence before the payment to

King, he (King) having like notice before his purchase. In this view of the law there was error.

If the levy had been made before the sale to plaintiffs, the case would be very different.    But the levy could only reach the interest of the debtor (or Pendergast) in the note.    Whatever interest he had was held by it, but not the interest of another.    If the note then belonged to another, there was no leviable interest, and no rights attached by virtue of such levy.    And while the levy and sale might transfer the debtor's interest, it could not that of another, any more than it could a horse or a wagon, which had been previously sold, whether the plaintiff and officer had notice of the sale prior to the levy or not.    Nor does the judicial sale change the obligation of defendant to pay plaintiffs, who owned this note at the time of the levy, is the question.    The plaintiffs, unquestionably, as between them and Pendergast, and his creditors.    By their purchase they had an equity which they could enforce against any one having notice of it.    And notice before the sale, though after a levy, would be sufficient.    This equity was sufficient to support defendant's promise, and after that his liability to them was complete.

Let us take another view of the case.    Suppose, instead of levying upon the note, Clancy had caused defendant to be summoned as garnishee.    Before he was thus summoned, plaintiffs, in good faith, and for value, purchased the note; but neither Clancy or Barrett had notice of it before the service of the writ, but did have notice before answer.    Is there any question that the plaintiffs would be protected? Or, in other words, could defendant avoid his liability to plaintiff upon the grounds that he was attached as garnishee before notice of the transfer?    The case of *Walters* v. *Ins. Co.*, 1 Iowa, 404, is decisive of this very question, for it is there held, that if the garnishee have notice before answer, and neglects to show it in defense, he cannot resist a sub-

sequent claim of the assignee; and, having shown it, he cannot be charged as garnishee. And that was a case relating to unnegotiable paper. And further, upon this subject, see *Dyer* v. *McHenry & Co.*, 13 Iowa, 527; *Bur on* v. *District Township*, 11 Id., 166; *Stevens* v. *Pugh*, 12 Id., 430; *McCoid* v. *Beattey*, Id., 299.

Entertaining these views, it follows that the Court below erred in holding that defendant, having paid the note to King, was not liable, unless he had notice of the plaintiffs' rights *before* the levy of the execution. If the note was transferred before, and he subsequently had notice thereof, and promised to pay it, he would be liable, and payment to the purchaser at the judicial sale will afford him no defense.

Reversed.