# McCullough *v.* Mitchell.

*Action on Promissory Note, by Payee against Maker.*

1. *Usury; when available, as defense to note.*—To cut off the defense of usury against a non-commercial promissory note, in the hands of a person who was not a party to the original transaction, there must be more than a transfer to him in good faith, and without notice of the usury : there must be a renewal of the debt, by giving a new security payable to him.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

This action was brought by Buckner H. Mitchell, against Thomas McCullough ; was commenced on the 20th August, 1877 ; and was founded on the defendant's promissory note for $447.97, dated the 20th January, 1873, and payable on the 14th October, 1873, to the plaintiff or bearer. The defendant pleaded the general issue, usury, and a special plea denying the plaintiff's ownership of the note ; and issue seems to have been joined on all these pleas. On the trial, as the bill of exceptions shows, the plaintiff having read in evidence the note sued on, the defendant testified, as a witness for himself, " that he bought a tract of land in 1858, from one Townsend, for $1,600 ; that when the purchase-money became due, in 1858, or 1859, he was ready to pay it, but Townsend requested him to pay only $600 of the amount due, and to give his note for the remaining $1,000, with interest at twelve per cent. *per annum,*—saying that he was the guardian of —— Killen, a minor, and had money belonging to her which he wished to loan out. Defendant assented to this proposition, paid Townsend $600, and gave him his note for $1,120, payable twelve months after date, being $1,000 with interest at twelve per cent. . He gave no sureties on the note, and did not recollect whether the note was made payable to Townsend individually, or as guardian. At, or soon after the maturity of

[McCullough v. Mitchell.]

the note, he paid Townsend $500 on the debt, and gave him
a new note for the balance due, calculating interest on the
$1,120 from the maturity of the original note, which was taken
up, and destroyed. Townsend died in 1862; and in 1865,
after the war, defendant found said new note in the possession
of said —— Killen, who was then over twenty-one years of
age, and who claimed the note as her own; and defendant
paid her $100 on it. Miss Killen afterwards married the
plaintiff in this suit, who then applied to defendant for pay-
ment of said note; and defendant thereupon paid him a part
of the amount, took up the old note, and gave a new note for
the residue, payable to the plaintiff; and after making one or
two payments on this note, it was also taken up, and the note
now sued on was given for the balance. In each of these
settlements with plaintiff, when a new note was given, and
the old one taken up, interest was calculated at eight per
cent. on the amount the note called for, and nothing was said
about usury in the original transaction; and defendant never
said any thing to plaintiff, or to plaintiff's wife, about usury
in the original transaction, until after the maturity of the
note in suit. The several payments made by defendant to
plaintiff on the debt, as above stated, amounted to $750, or
more; amounting, together with the payment to Townsend,
to more than $1,000.

"Mrs. McKay, who was the widow of said Townsend, tes-
tified, on behalf of defendant, that she knew of the original
transaction between said Townsend and defendant, and that
twelve per cent. for interest was added into the face of the
note, substantially as stated by defendant; also, that she
administered on the estate of said Townsend, and found
among his papers defendant's said note for the balance of the
$1,120; that she, as administratrix, settled said Townsend's
guardianship of Miss Killen in 1864, when a large balance
was found due to said ward; that she, as administratrix, in
payment of this amount, transferred to Miss Killen, who was
then of age, defendant's said note, with several other notes
belonging to Townsend's estate; that Miss Killen took said
notes at par, in payment of said debt, preferring them
to Confederate money, which was the only other means of
payment at that time. There was evidence tending to show
that, at the time Miss Killen took defendant's note as afore-
said, she was informed that there was usury in said original
note, and that interest at $12\frac{1}{2}$ per cent. *per annum* was included
in the face of said note. Miss Killen took that note, and the
others, just as they stood. Witness did not recollect whether
defendant's said note, turned over to Miss Killen, was paya-
ble to Townsend as guardian.

"Plaintiff then testified, as a witness in his own behalf, that he obtained from his wife the defendant's note which Townsend's administratrix had transferred to her ; that it was payable to Townsend individually ; that when he applied to defendant for payment of it, defendant said times were hard—' that he had been broke up by the war, but would pay it if the heavens fell ;' but that witness must give him time, and not crowd him. Some time after this first conversation, defendant paid him $500 on the note, and gave him a new note for the balance, payable at a future day, and took up the Townsend note. At or after the maturity of this new note, plaintiff applied to defendant for payment of it, and defendant made one or more payments on it, and wanted more time on the balance ; and they finally had a settlement, in which the payments were credited, and the note now in suit was given for the balance then found due. Witness had never heard of any usury in the original transaction with Townsend, nor of any defense whatever to the claim, until after the maturity of the note in suit ; and, so far as he knows, his wife had never heard of any. The evidence tended to show that plaintiff, before he ever called upon defendant in reference to said note, had said there was usury in said original note, and that it bore interest at $12\frac{1}{2}$ per cent. *per annum.*

"This was all the evidence in the case ; and the plaintiff thereupon requested the court, in writing, to charge the jury that, if they believed the evidence, the defendant could not set up the defense of usury against the note sued on, and they must find for the plaintiff, for the amount of said note, with interest." The court gave this charge as requested ; to which the defendant excepted, and which he now assigns as error.

CLOPTON, HERBERT & CHAMBERS, for appellant, cited *Pearson v. Bailey*, 23 Ala. 537 ; *Churchill v. Suter*, 4 Mass. 156 ; *Payne v. Trezevant*, 2 Bay, 23 ; *Powell v. Waters*, 8 Cow. 669 ; *Young v. Berkley*, 2 N. H. 410 ; *Vickery v. Dickson*, 35 Barb. 96 ; *Garth v. Cooper*, 12 Iowa, 364 ; 66 Ill. 532.

TROY & TOMPKINS, *contra*, relied on the former decision— *Mitchell v. McCullough*, 59 Ala. 179, and authorities therein cited.

STONE, J.—When this case was in this court at a former term (59 Ala. 179), the recital of the evidence in the bill of exceptions showed "that neither Miss Killen, nor her husband, the plaintiff, knew any thing of usury, or participated in any manner in the original usurious transaction. The

first time the plaintiff heard of the usurious transaction, was after the maturity of the note in suit." We said: " By the renewal of the note to the subsequent holder, who did not participate in the usurious transaction, gave full value for the claim, and had no knowledge of the usury, the defendant precluded himself from relying on that defense." The recital in the present record is, " There was evidence tending to show that, at the time Miss Killen took defendant's note, she was informed there was usury in it, and that 12½ per cent. *per annum* had been included in its face. She took that note, and the other papers, as they stood." There is, then, this difference in the two presentations of the question : in the former record, it was affirmatively shown that Miss Killen did not know of the usury, when she received the note in payment; in the present record, there is testimony tending to show that she was informed there was usury (12½ per cent.) in the note when she took it.

The policy of laws for the suppression of usury has been frequently assailed, but without lasting success. The experiment of abolishing all restraints on the rate of interest was once made in this State ; but the result was so disastrous, it was soon abandoned. Most men are hopeful of future success, and, to relieve a pressing want, they will promise more for present use of money, than it is worth, or than they are able to pay. Hence, the policy of usury laws. Legislators refuse to strike them from the statute-books, and courts enforce them in their integrity. They impart a taint to all transactions into which they enter, which can be purged, or eliminated, only in one of two ways : either by reformation of the contract, rejecting all usurious taint, or by a renewal of the note or contract, after it has passed into the hands of an innocent purchaser, without notice of the usury. Simple renewals of the evidence of a debt, infected with usury, stand for nothing.—*Jackson v. Jones,* 13 Ala. 121 ; *Pearson v. Bailey,* 23 Ala. 537 ; *Payne v. Trezevant,* 2 Bay (S. C.), 23 ; *Vickery v. Dickson,* 35 Barb. 96 ; *Garth v. Cooper,* 12 Iowa, 364 ; *Chadbourne v. Watts,* 10 Mass. 121.

In *Torrey v. Grant,* 10 Sm. & Mar. 89, the court (C. J. SHAR-KEY) ruled, that a note, or other security, given in renewal of a usurious note, was usurious ; and that an indorser of a note, who takes it with notice that it is tainted with usury, takes it subject to that defect. So, in all the cases, which hold that an indorsee or transferree of usurious paper can recover, it will be found either that the maker, by some act of his, had estopped himself from setting up the defense of usury, or that the indorsee became the owner of the security without notice of the usury. In this State, which allows all defenses to non-

commercial paper which would avail between the original parties, to be made against the indorsee, though he purchased before maturity, to cut off the defense of usury against such non-commercial paper, there must be more than a transfer of the paper to one who receives it in good faith, and without notice of the usury. There must, in addition to this, be a renewal of the debt, by giving a new security, payable to the transferree. This, we have held, amounts to a waiver of the defense of usury.—*Cameron v. Neal*, 3 Ala. 158; *Palmer v. Severance*, 8 Ala. 53; *Gee v. Bacon*, 9 Ala. 699; *Mitchell v. McCullough*, 59 Ala. 179; *Chadbourne v. Watts*, 10 Mass. 121; *Smedburg v. Whittlesey*, 3 Sandf. Ch. 320; *Powell v. Waters*, 8 Cow. 669; *Young v. Berkley*, 2 N. H. 410; *Allison v. Barrett*, 16 Iowa, 278; Tyler on Usury, 381 *et seq.*

The City Court erred in the charge given at the request of the plaintiff. Reversed and remanded.