# Southern Home Building & Loan Association *v.* Riddle.

*Bill in Equity by Creditor to have Conveyances declared Null and Void on account of Fraud.*

1. *Objections to evidence; sufficiency thereof.*—Where, in a motion to suppress an answer to an interrogatory, the objection is based upon the ground that it was not responsive to the interrogatory and because it was illegal and irrelevant, such ob-

:ection is sufficient to authorize the exclusion of the testimony objected, to, if it is illegal, although the objection that the answer was not, responsive to the interrogatory may not have been seasonably made.

2.  *Same; same; when evidence shown to be illegal.*—In a suit in equity instituted by a creditor of a partnership against the individual members thereof and the grantees in certain conveyances, to have set aside such conveyances as fraudulent and void as against complainants, in an interrogatory propounded to the complainant, he was asked to state if he knew who composed the debtor firm, designating it by name. In answer to this interrogatory, the complainant as a witness, replied that he "understood the said firm [designating it by name] to be composed of" certain persons made defendants to the bill and one other party. Just before the cause was submitted on final hearing, there was an objection to this testimony, and a motion to suppress the answer, upon the ground that it was not responsive to the interrogatories and was illegal and irrelevant. *Held*: That such testimony should be excluded for illegality; and, therefore, it. is immaterial whether the objection that it was not responsive to the interrogatory was seasonably made or not.

3.  *Same; same.*—In such a case, the answer of the complainant as a witness that he sold to the parties defendant to the bill the goods under the firm name of the partnership, as described in the bill, is responsive to an inquiry in an interrogatory, whether the witness "was acquainted with the parties to and the subject matter of the pending suit," and is also relevant and admissible as evidence in the case.

4.  *Fraudulent conveyance; when conveyance to wife void as against husband's creditors; burden of proof.*—A conveyance executed to the wife of a debtor by a third person at the instance of her husband, who paid the purchase money, is void as against the latter's existing creditors, and when assailed by them, the burden is upon the wife and those claiming under her of proving that the consideration did not move from the husband, but was paid with her separate fund; and in the absence of such proof on the part of the defendants, such conveyance will be declared fraudulent and void.

5.  *Same; effect of usury as to bona fide purchaser.*—A stipulation for usurious interest upon a debt secured by a mortgage, so infects and taints the transaction as to preclude the mortgagee from being a *bona fide* purchaser without notice of outstanding equities in third parties; and as against such mortgagee, the holders of outstanding equities are entitled to the same measure of relief as they would have been against the mortgagor had not the mortgage been executed.

[Southern Home Building & Loan Association v. Riddle.]

6. *Chancery pleading and proof; effect of rendering a decree before case is at issue.*—Where there is a failure to perfect service of an amended bill on one of the defendants, whose interest was effected by such amendment, and where it is not shown that such defendant answered the bill as amended, or that there was any decree *pro confesso* taken against him, or that he joined in the submission of the cause, said cause is not at issue as to such defendant, and on said state of pleadings it is error for the chancellor to render a final decree.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill was filed by Robert Riddle, as a judgment creditor of J. B. Allen, against J. B. Allen, Sallie B. Allen, his wife, and the Southern Home Building & Loan Association. It is sought to subject to the payment of complainant's demand certain real estate alleged to have been conveyed to Sallie B. Allen at the procurement of said James B. Allen, and afterwards conveyed by mortgage made by the said James B. Allen and Sallie B. Allen to the Southern Home Building & Loan Association.

The original bill was filed on the 15th day of December, 1894. It alleges that the Southern Lumber Company, a partnership composed of James B. Allen and R. L. Allen, became indebted to complainant in the months of June, July, August and September, 1888, in the sum of $430.73; that on the 13th day of September, 1888, complainant brought suit by attachment against said J. B. Allen and R. L. Allen and that judgment was procured thereon on the 5th day of July, 1892, for $560.05, as debt, and the further sum of $150 as costs of suit, which it is alleged the complainant had paid; that the amount of said judgment and costs had never been paid; that on the 12th day of May, 1890, the Decatur Land Improvement & Furnace Company conveyed to said Sallie B. Allen certain real estate in New Decatur, the consideration for which conveyance was paid by J. B. Allen, the title being taken in his wife's name to hinder, delay and defraud his creditors, and that large improvements were made on said real estate by said J. B. Allen out of his own resources; that on

the 13th of February, 1891, said Sallie B. and James B. Allen executed a mortgage to the Southern Home Building & Loan Association on said property to secure a loan of $800, which stipulated for a usurious rate of interest; that the Southern Home Building & Loan Association had full knowledge of the said fraud of James B. Allen. It was also alleged that such mortgage was void because the Southern Home Building & Loan Association was a corporation, organized under the laws of the State of Georgia, and had not filed in the office of the Secretary of State of Alabama a certificate designating a known place of business and an authorized agent. The prayer of the bill was that such mortgage might be annulled and adjudged of no effect as against complainant's demand and that said real estate might be subjected to the payment of said demand.

The joint and separate answer of Sallie B. and James B. Allen was filed on the 17th day of January, 1895. This answer admits the indebtedness of James B. Allen to complainant, but denies the fraud charged in the bill.

The answer of the Southern Home Building & Loan Association, which will hereafter in this statement be designated as the "Association," was filed on the 23d day of January, 1895. This answer requires the complainant to make proof of the allegation of the indebtedness to him on the part of James B. Allen, and while stating that defendant has no knowledge of its own as to the averments of fraud on the part of James B. Allen, it denies all of said allegations. It admits the execution of the mortgage, a copy of which is made an exhibit to the answer, and avers that the mortgage was made to secure a loan or advance of $800 made to the said Sallie B. Allen and James B. Allen by the Association at the time of the execution of the mortgage, which indebtedness was evidenced by a bond made by them, a copy of which is also annexed as an exhibit to the answer. It denies that the loan was usurious and also denies that it had failed, prior to the execution of said mortgage, to file the certificate in the office of the Secretary of State, as alleged in the bill. The answer further sets up the fact that defendant is a purchaser of the

[Southern Home Building & Loan Association v. Riddle.]

property from both James B. Allen and Sallie B. Allen, and hence that it is immaterial, so far as the defendant's rights are concerned, whether the title was by the said J. B. Allen fraudulently placed in the name of his said wife. The answer further says that whether there be usury in the loan made by the Association to the Allens is an immaterial inquiry, so far as complainant is concerned, since he was in no wise injured thereby and could not avail himself of the same. On the 7th day of March, 1895, the complainant amended his bill. The amendment alleges that the mortgage debt to the Association had been fully paid, but offers to do equity by paying such sum as the court might require, as the condition of granting relief. It also alleges that the property in question and improvements thereon were paid for by James B. Allen in fraud of the rights of his creditors. It also propounds a number of interrogatories to the Association and calls for answer under oath. The Association demurred to the bill as amended and filed a motion to dismiss the same for want of equity. The grounds of demurrer are in substance that as the Association is a purchaser from both James B. Allen and Sallie B. Allen it is immaterial whether he be a *bona fide* purchaser from Sallie B. Allen and it is also immaterial whether there be usury in the mortgage; and that complainant could not assail the mortgage on account of the failure of the Association to file the certificate referred to in the office of the Secretary of State; that the bill is insufficient as a bill to redeem because it did not show that the mortgage debt was due and because there was not sufficient offer to do equity.

On the 11th day of May, 1895, the chancellor rendered a decree sustaining the demurrer of the Association based on the ground that complainant could not have the mortgage annulled because of the failure of the Association to file the certificate in the office of the Secretary of State, and overruling the other grounds of demurrer. On the 3d day of June, 1895, complainant further amended his bill by striking out that paragraph of the bill setting up the failure of the Association to

file the certificate referred to and making the same allegation in similar language and also by making G. A. Cabaniss, President of the Association, and W. R. Nutt, agent of the Association, parties defendant, in order to obtain answer under oath to the interrogatories above mentioned. On the 6th day of January, 1896, the Association filed its answer to the bill as amended. The answer denies the averments to the bill. It also incorporates the answers to the interrogatories of complainant, which are duly sworn to by G. A. Cabaniss, president of the Association. These answers show that the Association had advanced in money to Sallie B. Allen and James B. Allen the sum of $800, which was secured by the bond and mortgage in question, that the amount due on said mortgage indebtedness on the 1st day of January, 1895, was $684.84, and that the mortgage was duly foreclosed, the Association becoming the purchaser of the property at the foreclosure sale. This answer also incorporates various grounds of demurrer, being in substance the same as above set out. On the 5th day of June, 1896, the court rendered a decree holding that the demurrers of the Association, going to that part of the bill which set up the failure of the Association to file the certificate in the office of the Secretary of State were well taken and overruling all the other grounds of demurrer. On the 6th day of June, 1896, complainant amended his bill by striking out the allegations referring to the failure of the Association to file such certificate in the office of the Secretary of State.

On the 11th of March, 1897, complainant again amended his bill by alleging usury in the mortgage indebtedness and by further alleging that on the 18th day of February, 1895, the Association had foreclosed its mortgage under the power of sale contained therein, at which time, according to the contract, the sum of $584 was then due, and that Association became the purchaser at the sale. On the 12th day of April, 1897, the Association filed its answer to the bill as amended, denying the allegation of usury, admitting the foreclosure of the mortgage, and incorporating the same grounds of demurrer as in its former answer.

On the 11th day of September, 1897, complainant amended his bill by alleging the financial embarrassment of James B. Allen at the time of the conveyance to Sallie B. Allen and that the Association had notice of such financial embarrassment at the time of the execution of the mortgage  On the 22d day of September, 1897, the Association filed its answer to the amendment, setting up that it was not informed as to whether the allegations concerning the financial embarrassment of James B. Allen were true, but denying that it had any knowledge or notice of the same.

The following is a summary of the testimony submitted to the court, on which its decree was rendered:

(1.)　The proceedings in the attachment suit of Robert Riddle against J. B. Allen and R. L. Allen, composing the Southern Lumber Company.　(2.)　Proceedings in the detinue suit of Carlton, Foster & Co. against J. B. Allen, which was begun on the 14th day of December, 1888, judgment in which was rendered on the 26th day of June, 1890, the alternate value of the property being assessed at $1,085.33.　(3.)　A summons to J. B. Allen and R. L. Allen to show cause why judgment which had been rendered against them at the June term, 1890, of the circuit court of Morgan county, Alabama, in favor of C. L. Gordon & Co. for $454.70 should not be made final.　This summons was issued on the 15th day of October, 1891.　(4.)　Proceedings in the attachment suit of James A. Carney against J. B. Allen begun on the 14th day of December, 1888.　(5.)　Proceedings in the attachment suit of John A. Dennie and Thomas M. Scruggs against the Southern Lumber Company.　So far as it appears there was no judgment in this case. (6.)　Proceedings in the attachment suit of Exchange Bank against J. B. Allen.　There seems to have been no judgment in this case. (7.) A judgment entry in favor of the Lathrop-Hatton Lumber Company against Sallie B. and James B. Allen and R. L. Allen, rendered on the 5th day of August, 1889, for $165.18, which was rendered on account of the failure of Sallie B. Allen to answer certain interrogatories. (8.) A deed of trust on certain personal property made by Sallie B. Allen to W. W.

Littlejohn, as trustee, bearing date February 12, 1889. (9.) The deed referred to in the pleadings, made by the Decatur Land, Improvement & Furnace Co. to Sallie B. Allen on the 12th day of May, 1890. (10.) The deposition of Robert Riddle.

The defendant Building and Loan Association submitted on the following evidence: (1.) Sworn answer of the Southern Home Building & Loan Association, filed on the 6th day of January, 1896, and exhibits thereto. (2.) The original mortgage by James B. Allen and Sallie B. Allen to the Southern Home Building & Loan Association on the 13th day of February, 1901.

The second and third interrogatories propounded to Robert Riddle were as follows: "Int. 2. Are you acquainted with the parties to, and the subject-matter of this suit?"

"Int. 3. State if you know who composed the firm known as the Southern Lumber Company of Decatur, Alabama, in 1887 and 1888." The other interrogatories to Riddle sought to elicit from him testimony in reference to his claim against the Southern Lumber Company or J. B. Allen. The answers of the witness Riddle to the second and third interrogatories were as follows: "To the second interrogatory he saith: 'I know James B. Allen, but have never met Sallie B. Allen, his wife. I sold them goods in 1888, under the firm name of Southern Lumber Co., at New Decatur, Ala.'

"To the third interrogatory he saith: 'That he understood the Southern Lumber Co. to be composed of James B. Allen and wife, and R. L. Allen, during 1887 and 1888.'" In his further answers to the remaining interrogatories propounded to him, said Robert Riddle testified to his having sold to the Southern Lumber Co. in Decatur, Ala., windows, doors and blinds, amounting to something over $400; that neither said Lumber Company nor James B. Allen had ever paid him for the articles of merchandise so purchased; that these sales were made in June, July, August and September, 1888, and during these months the Lumber Company gave to the said Riddle notes for the amount due for goods delivered during the respective months, and that each of these

notes was made payable 60 days after date; that upon the failure of the Southern Lumber Company, or Allen, to pay the said note, suit was instituted thereon and judgment was recovered, but that upon this judgment no payment has ever been made, and that at the time of making his answer, there was due by the Southern Lumber Company to said Riddle $439.73, with interest and costs.

The Southern Home Building & Loan Association objected to and moved to suppress the answer of Riddle to the second interrogatory upon the ground that said answer was not responsive to the question, and was illegal, irrelevant and immaterial. Said association also moved to suppress the answer of said Riddle to the third interrogatory, upon the following grounds: 1st. It was not responsible to the interrogatory. 2d. It is hearsay, and not the statement of a fact, but only states what the witness supposed to be a fact. 3d. It does not give the source of the witness's information; and 4th, that it was illegal, immaterial and irrelevant. The Southern Home Building & Loan Association also separately objected to the introduction in evidence of the records and proceedings of the several attachment and detinue suits prosecuted by various persons as creditors of James B. Allen about the time of the execution of the conveyance attacked in this suit, upon the ground that such records and proceedings were illegal, immaterial and irrelevant to any of the issues in the cause.

So far as appears from the record, there was no service of any of the amendments to the bill on the defendants, James B. Allen and Sallie B. Allen. They never filed an answer after the bill was first amended, and the only answer filed by them or either of them was the answer filed to the original bill. No decree *pro confesso* is shown to have been taken against either of them.

On June 6, 1898, the cause was submitted for hearing on pleading and proof, and upon the objections and exceptions to the evidence and the motion to suppress. The chancellor rendered a decree overruling the motion to suppress said portions of the answer of the witness Riddle, and overruling the objections and exceptions to

the several portions of the evidence as reserved by the Southern Home Building & Loan Association.

It was further decreed by the chancellor that the conveyance of the lots in question to Sallie B. Allen was fraudulent and void as to the creditors of James B. Allen, and that the mortgage made to Sallie B. Allen and James B. Allen was null and void as against such creditors, and that the complainant was entitled to the relief prayed for; and it was ordered that in the event the amount of the indebtedness to the complainant, which was ascertained by the decree, was not paid to the complainant within 60 days, then the lots involved in the suit should be sold for the payment of said amount.

The appeal is prosecuted from this decree by the Southern Home Building & Loan Association, Sallie B. Allen and James B. Allen. The Association assigns as error separately the following rulings of the court: 1st. In failing to sustain the defendant's demurrers. 2d. In overruling the defendant's objection to the testimony. 3d. In the final decree rendered adjudging the defendant's mortgage to be null and void as against complainant s.

James B. Allen and Sallie B. Allen assignments of error are based upon the following rulings of the court: 1st. In proceeding to final decree before the cause was at issue as to these defendants. 2d. In rendering a final decree to the bill as amended, when service of the amendments had not been made on these defendants. 3d. In proceeding to final decree before defendants had answered the bill as amended, and before any decree *pro confesso* was rendered against these defendants. 4th. In rendering the final decree.

CABANISS & WEAKLEY, for Southern Home Building & Loan Association.—The chancellor erred in overruling the defendant's motion to suppress the answer of Riddle, and also in overruling the objection to the specific portions of the evidence introduced.—*Whilden v. M. & P. Bank*, 64 Ala. 1; *Binford v. Dement*, 72 Ala. 491.

In an action to set aside a conveyance for fraud the burden of showing a valuable consideration is on the purchaser, but when such payment has been shown, the

burden is shifted to the complainant creditor to prove a fraudulent intent on the part of the debtor and knowledge thereof by the purchaser.—*Moog v. Farley,* 79 Ala. 246; *Howell v. Carden,* 99 Ala. 100.

Although the effect of a mortgage is to hinder, delay or defraud the grantor's creditors, and he executed the instrument with that purpose, yet if the mortgagee did not participate in such intent, but accepted the conveyance for the sole purpose of securing a *bona fide* debt to the amount named in the instrument, the deed of trust is not void, either because of its effect upon the rights of other creditors, or because of the fraudulent purpose of the grantor.—*Howell v. Carden,* 99 Ala. 100; *Cooper v. Berney National Bank,* 99 Ala. 119.

A mortgage is not rendered fraudulent as to creditors by usury in the debt, where the usurious charge is a stipulation incident to and part of the contract creating the debt and is not added to the debt at the time of the execution of the mortgage for the purpose of swelling the amount secured.—*Loucheim v. First National Bank,* 98 Ala. 521; *Harris v. Russell,* 93 Ala. 59; *Howell v. Carden, supra.*

The mortgagee who parts with value stands precisely in the same attitude as a purchaser of the absolute title, so far as the creditors of the fraudulent grantor are concerned.—*Rogers v. Adams,* 66 Ala. 600; *McCall v. Rogers,* 77 Ala. 349.

D. W. SPEAKE, for Allen.—The cause not having been at issue as to Sallie B. and James B. Allen and a decree having been rendered adjudging relief against them, the decree must be reversed on their assignment of error.—*Alston v. Alston,* 34 Ala. 15; *Masterson v. Masterson,* 32 Ala. 437; *Vaughan v. Smith,* 69 Ala. 92; *Holly v. Bass.* 63 Ala. 387; Ency. Pl. & Pr., 984.

Failure to perfect service of an amended bill on one of the defendants, from whom an answer to such amendment was required, is an error which will work a reversal of the chancellor's decree, at the instance of the defendants, although the omission seems to have escaped the notice of the chancellor and counsel in the

court below.—*Alston v. Alston, supra; Masterson v. Masterson, supra.*

E. W. GODBEY, *contra.*—The motion to suppress a part of Riddle's deposition being made at the hearing for the first time, and not being noted in the minutes or note of testimony, was properly overruled.—Rule Ch. Prac., 76; *Whilden v. Bank,* 64 Ala. 31; *Moore & Co. v. Robinson,* 62 Ala. 537; *Carlisle v. Humes,* 111 Ala. 673; *Binford v. Dement,* 72 Ala. 492.

The judgment, upon the whole record, was against J. B. Allen.—*Johnson v. McDaniel,* 110 Ala. 526. The law presumes J. B. Allen's money paid for the lots conveyed to his wife by the Decatur L. I. & F. Co. in fraud of his creditors.—*Kelly v. Connell,* 110 Ala. 543.

The provisions in the mortgage prolonging the time it was to run for about eight years, possession and use being all the while reserved to the Allens, they both being insolvent, rendered the mortgage on its face fraudulent and void.—*Age Herald Co. v. Potter,* 109 Ala. 281; *McDowell v. Steele,* 87 Ala. 493.

The insolvency of the Allens was all the while indicated by the numerous attachments, long unsatisfied judgments with waiver, and in tort, trust deeds, and the aforesaid mortgage.—*Hudson v. Bauer Grocery Co.,* 105 Ala. 200; *Hoyt v. Turner,* 84 Ala. 527; *Bank v. Walton,* 5 L. R. A. 765, note.

The investment of Allen's money in real estate while judgments were existing and threatening, other debts maturing, the conveyance of that real estate by a very long-time mortgage, reserving to themeselves the continued use and enjoyment thereof all the while, was fraudulent against subsequent, as well as against existing creditors.—*Prestwood v. Troy F. Co.,* 115 Ala. 668; *Stoutz v. Huger,* 107 Ala. 248; 2 Bigelow on Fraud, 106; Wait on Fraud. Conv., § 98; *Seals v. Robinson,* 75 Ala. 369; *Echols v. Pcurring,* 107 Ala. 660.

The usury in the mortgage to the Building & Loan Association precluded it from setting up any defense of a *bona fide* purchase without notice.—*N. M. B. & L. Assn. v. Culberson,* 126 Ala. 682; *Cap. City Ins. Co. case,* 73 Ala. 558; *McCulloch v. Mitchell,* 64 Ala.

250; *Wailes v. Couch*, 75 Ala. 134; *LeGrand v. Hall*, 81 Ala. 123, 131.

McCLELLAN, C. J.—The testimony of Riddle that he "understood the Southern Lumber Co. to be composed of James B. Allen and wife and R. L. Allen during 1887 and 1888" should have been excluded for illegality, and hence it is immaterial whether the further objection that it was not responsive to the interrogatory was seasonably made or not.—*Whilden & Sons v. Merchants and Planters' National Bank*, 64 Ala. 1, 31.

The testimony of Riddle "I sold them goods in 1888 under the firm name of Southern Lumber Co. at New Decatur, Ala." was responsive to the inquiry of the second interrogatory whether he was acquainted with the subject matter of the suit, and, not being objectionable in other respects, the court properly overruled the motion to suppress it.

The chancellor, in our opinion, was fully warranted by the testimony of Riddle, leaving out of view that part of it which should have been suppressed referred to above, and considering it in connection with the record of the suit at law prosecuted by Riddle against James B. and Robert L. Allen, partners doing business under the name of the Southern Lumber Co., including the judgment therein rendered July 5, 1892, for debt and costs, in reaching the conclusion that James B. Allen was indebted to Riddle, the complainant here, prior to and at the dates of the deed from the Land Company to Sallie B. Allen and of the mortgage from Sallie B. and James B. Allen (each conveyance covering the lots involved in this suit) to the respondents, the Southern Home Building and Loan Association.

It is clear also, we think, that the records of the several attachment and detinue suits prosecuted by persons as creditors of James B. Allen about the time of the conveyances attacked in this cause, and the mortgage made by him, were properly received in evidence on the question of his solvency at that time; and upon the whole evidence we concur with the chancellor in holding that he was then insolvent.

It follows upon the foregoing considerations, the respondent Allens not having sufficiently alleged in their answer, nor even attempted to prove, that the lots conveyed by the Land Company to Sallie B. were paid for with her own money and not with the money of James B., her husband, that the conveyance to Mrs. Allen must be held to have been made upon a consideration moving from her husband to be a fraud upon the complainant and his other creditors; and so also, of course, in respect of the improvements put upon the lots: they, too, are or were held by Mrs. Allen, under the averments of the bill and the lack of averment and proof to the contrary on her part, in fraud of her husband's creditors and subject to their demands.—*Kelly v. Connell, Green & Co.,* 110 Ala. 543.

While these lots were thus held by Mrs. Allen she executed a mortgage on them to the Southern Home Building & Loan Association to secure a loan then made to her of $800. This transaction was, it is conceded for appellant, the mortgagee, tainted with usury: It is admitted the association charged, and in and by the terms of the mortgage and a bond evidencing the debt Mrs. Allen agreed to pay, more than eight per cent *per annum* for the use of the money she received. By the oft repeated and uniform decisions of this court, it has come to be thoroughly established in our jurisprudence that this stipulation for usurious interest so infects and taints the transaction as to preclude the respondent mortgagee from the defense of being a *bona fide* purchaser for value without notice of outstanding equities in third parties, and to let in the holders of such equities to the same measure of relief against the mortgagee as they would have had against the mortgagor had the mortgage not been executed (*Building & Loan Association v. Culberson,* 126 Ala. 682; *Capital City Ins. Co. v. Quinn,* 73 Ala. 558; *McCullough v. Mitchell,* 64 Ala. 250; *Wailes v. Couch,* 75 Ala. 134; *LeGrand v. Bank,* 81 Ala. 123, 131; *Farley National Bank v. Henderson,* 118 Ala. 441; *Hart v. Adler,* 109 Ala. 467; *Peterson & Co. v. Steiner Bros.,* 108 Ala. 629; *McCall v. Rogers,* 77 Ala. 349); and upon these considerations and authorities we concur with the chancellor that the com-

plainant is entitled on the case submitted to him to have the Building & Loan Association mortgage declared void as to his claim and to subject these lots to the satisfaction of his debt against James B. Allen.

The doctrine that a mortgagee whose debt is secured by the mortgage is usurious cannot be a *bona fide* purchaser for value is quite distinct from the principle declared in *Lehman, Durr & Co. v. Greenhut*, 88 Ala. 478, and reaffirmed in *Harris v. Russell*, 93 Ala. 59; *Loucheim & Co. v. First National Bank*, 98 Ala. 521, and *McLendon v. Grice*, 119 Ala 513, that an insolvent debtor may convey property in payment of an antecedent usurious debt, the usury being contracted for in the original transaction and not being added at the time of the sale for the purpose of equalization between the debt and the value of the property conveyed. There are cases which seem to repudiate this principle (*LeGrand v. Bank* and *Peterson & Co. v. Steiner Bros., supra*) ; but, assuming its soundness, its operation is confined to the *payment* of a *pre-existing* debt infected with usury in recognition of the *debtor's* right to pay usury in such debt, and it is without influence upon the status of a mortgagee as respects good or bad faith in contracting for usury upon the loan secured by the mortgage.

Sallie B. and James B. Allen are respondents to the bill. They answered the original bill. Four or five amendments were filed and allowed. The record does not show that the Allens or either of them had any notice of these amendments. They did not answer them, nor was any decree *pro confesso* ever taken against them, nor did they join in the submission of the cause. It cannot be affirmed either that the amendments would not and did not affect rights of the Allens or that they have lost all interest in the suit by reason of the fact that the mortgage to the association has been foreclosed for the amount of the debt secured by it and the expenses of foreclosure. One of the amendments, for instance, alleges divers facts going to show that James B. Allen was insolvent. Of course both said Allen and his wife had an interest in controverting these averments. They might have been able to show that

[Southern Railway Co. v. Cowan.]

the facts did not exist, or to explain them so as that they would consist with solvency. And if by showing James B.'s solvency, the mortgage to the Loan Association was supported, they thereby clearly conserved their interests in having the lots satisfy the mortgage to their relief on the covenants therein, and this whether the mortgage had been foreclosed or not. It follows, that, in our opinion, the court below erred in rendering a final decree before the case was at issue as to Sallie B. and James B. Allen.—*Alston v. Alston*, 34 Ala. 15; *Masterson v. Masterson*, 32 Ala. 437; *Vaughan v. Smith*, 69 Ala. 92; *Holly v. Bass*, 63 Ala. 387.

For the error pointed out the decree must be reversed. The cause is remanded.

Reversed and remanded.