H. L. ZIMMERMAN, Plaintiff, Appellee, v. C. A. HORNER, Clerk District Court, Defendant, Appellee, MASON CITY LOAN & INVESTMENT COMPANY, Intervenor, Appellant.

No. 43773.

MARCH 16, 1937.

Breese & Cornwell, for appellant.

Herbert H. Hauge, for appellee H. L. Zimmerman.

Carl A. Burkman, County Attorney, and Howard M. Hall, Asst. County Attorney, for appellee C. A. Horner.

MITCHELL, J.—This is a case in which there appears to be no dispute in regard to the facts, but there is a very sharp one as to the law.

On December 29, 1932, Lloyd L. Stanley gave his note to H. L. Zimmerman for $235, payable six months after date. On Febru-

150

ary 1, 1933, he gave another note to Zimmerman for $200, payable six months after date. On the same day Stanley executed in writing an assignment whereby the cause of action held by Stanley against the Abramson Construction Company was assigned to Zimmerman. The assignment was for the purpose of securing Zimmerman on the two notes. At that time there was pending in the district court of Polk county an action wherein Lloyd L. Stanley was plaintiff and Abramson Construction Company was defendant, upon which a judgment was entered on April 7, 1933, in favor of Stanley, for $704.77 plus interest of $154.50 and costs of $119.55. On April 7, 1933, Stanley, for a valuable consideration, in writing assigned his interest in the cause of action against the Abramson Construction Company to the intervenor, Mason City Loan & Investment Company.

In May of 1934 Zimmerman brought suit on the two notes against Stanley, in the municipal court of Des Moines, and judgment was rendered May 18, 1934, in favor of Zimmerman and against Stanley, for the amount of $435, with interest and costs. Later in the same month Zimmerman caused a general execution to issue on his judgment against Stanley, to the sheriff of Polk county, and directed him to levy said execution upon the judgment rendered against the Abramson Construction Company in the case of Stanley v. Abramson Construction Company. Levy in accordance with direction was made on May 23, 1934.

On June 6, 1934, the Mason City Loan & Investment Company filed in the district court of Polk county, Iowa, the assignment from Stanley to them of his interest in the suit and judgment against the Abramson Construction Company.

On July 2, 1934, the sheriff of Polk county, pursuant to the execution issued in the case of Zimmerman v. Stanley, sold the judgment rendered in the case of Stanley v. Abramson Construction Company, to Zimmerman, who bid the full amount of his judgment, interest and costs. The Zimmerman judgment against Stanley was fully satisfied and the judgment in the case of Stanley v. Abramson Construction Company was assigned by the sheriff to Zimmerman. Thereafter there was paid on account of the judgment against the Abramson Construction Company, to C. A. Horner, clerk of the district court of Polk county, Iowa, the sum of $650. Zimmerman and the Mason City Loan & Investment Company each demanded that the clerk pay the money to them, which of course the clerk refused to do.

Neither Zimmerman nor the Abramson Construction Company had notice of the assignment to the Mason City Loan & Investment Company prior to June 6, 1934.

In December of 1935, the clerk having refused to pay the money to Zimmerman, he commenced this present action, wherein he prayed for a writ of mandamus, directing the clerk to pay the $650 to him. Thereafter the Mason City Loan & Investment Company filed its petition of intervention, admitting the giving of the assignment but alleging that Zimmerman had secured a judgment against Stanley and had levied upon the judgment that Stanley had against Abramson Construction Company and had purchased it for the full amount of his claim; that he had elected to pursue that remedy and had waived any right he held under the assignment. The intervenor thereafter alleged the assignment to it, and asked for a writ of mandamus against the clerk, directing payment to the intervenor, Mason City Loan & Investment Company. Zimmerman filed answer to the petition of intervention and by amendment to same he alleged that he was the owner of the judgment against the Abramson Construction Company by virtue of the levy and sale.

The case proceeded to trial and the intervenor orally moved to strike portions of the amendment and to require Zimmerman to elect whether he was standing on his title by virtue of the original assignment, or whether he was standing on his title by virtue of the sheriff's sale on his judgment. Thereupon Zimmerman elected to rely upon his title to the judgment acquired by the levy and sale. The lower court entered a decree in favor of Zimmerman and the intervenor has appealed.

It was agreed between the parties that C. A. Horner, clerk of the district court of Polk county, was simply holding the money subject to the final determination by the court as to who was entitled to same.

I. This is an equity action and is therefore triable de novo.

Zimmerman had the first assignment to the fund due Stanley from the Abramson Construction Company. This assignment was merely by way of security. Thereafter Zimmerman saw fit to sue upon the two notes and secured judgment thereon. Then he levied upon the judgment that Stanley had against Abramson Construction Company. Up to that time he had had no notice that the Mason City Loan & Investment Company had any interest in or claim to this money, but after the levy and be-

fore the sale the intervenor filed its claim, setting up the assignment that it had. Zimmerman then sold under execution the judgment and bid it in for the full amount, plus interest and costs. Zimmerman had two claims to the Abramson judgment; first, he had the assignment as security, and second, he had the claim under the levy of his execution and purchase at the sale. It must be kept in mind that Zimmerman had elected to stand upon his title secured thru the sheriff's sale and not his assignment. It is the contention of the intervenor that Zimmerman has irrevocably elected, both by his actions and pleadings at the time of the trial, to rely upon the title acquired by virtue of the sale.

In the case of Elevator Company v. Union Pacific Railway Co., 97 Iowa 719, at page 722, 66 N. W. 1059, 1060, 59 Am. St. Rep. 434, we said:

"The claim of the appellee in regard to the matters included in the first ground of the motion is that the plaintiffs, as against the grain company, had the right to select either of two remedies, to wit: (1) To rescind the contract of sale, and recover the grain, as its absolute and unqualified owner; or (2) to stop the grain in transit, and enforce their vendors' lien for the purchase price. It is further claimed that these remedies are so inconsistent, that an election to pursue one, terminates the right to resort to the other, and that the plaintiffs made an irrevocable election to rescind the sale; therefore, that they cannot enforce a vendors' lien in this action. The appellants deny that they had a choice of remedies, and insist that the changes in their claims of interest in the property were permissible under their right to amend the pleadings.

"I. The rule in regard to the election of remedies is stated in Thompson v. Howard, 31 Mich. 312, as follows: 'A man may not take two contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again.' 'Any decisive act of the party, with knowledge of his rights and of the fact, determines his election, in the case of conflicting and inconsistent remedies.' (Citing cases.)

"In Connihan v. Thompson, 111 Mass. [270] 272, it was

said: ''The defense of waiver by election arises when the remedies are inconsistent, as where one action is founded on an affirmance, and the other on a disaffirmance, of a voidable contract, or sale of property. In such cases any decisive act of affirmance or disaffirmance, if done with knowledge of the fact, determines the legal rights of the parties once for all.' Where a vendor elects to rescind the sale of goods on the ground of a fraud, and recovers possession of them by an act of replevin, he cannot afterwards, on failing to obtain adequate relief in that action, claim of the assignee of the insolvent purchaser as for goods sold. One theory is totally at variance with the other. 'If one elects between two inconsistent remedies, the right to pursue the other is forever lost.' ''

And at page 727 of 97 Iowa, 66 N. W. 1059, 1062, we find:

''It is clear, under the rules of the cases we have been considering, that, if the right to elect existed, the action of the plaintiffs in taking the grain in controversy and selling it, under a claim of absolute ownership, with full knowledge of all the material facts, was an election of rights and remedies which was final and conclusive. The claim under which these actions were commenced in November, 1891, was that the plaintiffs were the absolute and unqualified owners of the grain. Taking possession of it, and acting on that claim, they sold it forthwith as their own, and did not modify their claim of ownership until February, 1894, when the amended and substituted petitions were filed. It is not averred in the pleadings as amended, nor is it shown by the evidence, that the claim of absolute ownership was made under any mistake. So far as we are informed, it was made with full knowledge of all material facts, and it necessarily involved the conclusion that the contract of sale had been rescinded.''

Zimmerman secured his judgment on the two notes and levied upon the Abramson judgment under a general execution, not by way of foreclosure of any claim that Zimmerman had in the Abramson judgment but as the property of Stanley, and purchased the same at execution sale. He bid the full amount of his judgment, interest and costs, and by so doing the indebtedness for which the assignment was security, was fully satisfied. Zimmerman might have acquired title by foreclosure. However, he

did not do this. He merely took judgment on the notes and levied on the property which he held as security.

In the case of Kerr v. Kennedy, 119 Iowa 239, at page 242, 93 N. W. 353, 354, this court, speaking thru the late Justice Weaver, said:

"If plaintiff by his contract obtained an equitable assignment of a portion of the moneys to be paid by the railroad company, then when the money was thereafter paid, the equitable title of plaintiff was converted or enlarged into a legal title, and the money, to the extent of forty per cent of the amount paid, became his property, as against defendant. See Fairbanks v. Sargent, 117 N. Y. 320 (22 N. E. 1039, 6 L. R. A. 475). And if Edgington received such moneys, knowing the facts, the forty per cent remained the property of plaintiff in his hands, and not the property of defendant. In such case it seems clear that garnishment proceedings would afford plaintiff no relief as a remedy or the recovery of his own property. We are therefore constrained to hold the claim of plaintiff, so far as it rests upon an alleged equitable assignment, is without merit, and, having elected to reach the fund by garnishment proceedings, the moneys, when placed in the hands of the garnishee, must be treated as the property of the defendant."

The appellee argues that since his assignment was first the intervenor took nothing by his assignment. We might agree with the appellee if this record did not conclusively show that the assignment to Zimmerman was for security only. The question of priority of assignment is not in this case because the appellee is not relying upon his assignment, has abandoned that and is relying simply on his rights under the sheriff's sale.

II. The next question before us is, "What title did Zimmerman get by purchase at execution sale?"

In Allison v. Barrett, 16 Iowa 278, at page 282, this court said:

"Recognizing this rule, the court below, nevertheless, held, * * *.

"But the levy could only reach the interest of the debtor (or Pendergast) in the note. Whatever interest he had was held by it, but not the interest of another. If the note then belonged to another, there was no leviable interest, and no rights attached

by virtue of such levy. And while the levy and sale might transfer the debtor's interest, it could not that of another, any more than it could a horse or a wagon, * * *. And notice before sale, though after a levy, would be sufficient.''

In McGuire v. Pitts' Sons, 42 Iowa 535, at page 537, we find:

''As between Kenefick and plaintiff, there is no doubt that the judgment in the garnishment proceedings would protect the former against the latter. The judgment not being negotiable, and the plaintiff having failed to give Kenefick any notice of his ownership until after judgment against him, the plaintiff will not now be permitted to compel Kenefick to pay him, while the judgment in the garnishment proceedings remains in full force. McCoid v. Beatty, 12 Iowa 299.

''If, however, the court has the power (and that has not been questioned either in this or the court below) to protect the garnishee, then we think a different rule must prevail. When the garnishee process was served on Kenefick, the judgment was not the property of the supposed debtor Keenan, but had been assigned to and was the property of the plaintiff. The fact that the assignment had not been filed, or made matter of record in court, or that the garnishee had no notice of such assignment, makes no difference, because the plaintiff in the garnishment proceedings obtained no other or greater rights than Keenan in fact, not apparently, possessed. Drake on Attachments, Section 527; Wakefield v. Martin, 3 Mass. 558.''

In the case of Dickinson v. Davis, 171 Iowa 29, at page 35, 153 N. W. 203, 206, we said:

''The assignment of the bonds to King carried with it not only the bonds, but all rights of Davis in and to the bonds and their proceeds. This assignment was made before the garnishment was served. Under the garnishment, the plaintiff acquired only such rights in the property as defendant Davis had at the time of the service of the garnishment, and no other. Davis having assigned the bonds to King, subject only to the rights of the bank to hold the same as collateral, there was nothing to which the garnishment could attach. As bearing upon this question, see McGuire v. Pitts' Sons, 42 Iowa 535; Kerr v. Kennedy, 119 Iowa 239, 93 N. W. 353; Harlow v. Bartlett, 96 Me. 294, 52 Atl.

638, 90 Am. St. Rep. 346; Ives v. Addison, 39 Kan. 172, 17 Pac. 797; Handley v. Pfister, 39 Cal. 283, 2 Am. Rep. 449.''

And so in the case at bar, prior to the time that Zimmerman levied upon the judgment, it had been assigned to the Mason City Loan & Investment Company. All that Zimmerman could get under that levy was the interest that Stanley had. Stanley, having prior to that time assigned the judgment, had no interest in it. Zimmerman bid the full amount of his judgment, interest and costs, and by so doing he satisfied the debt for which he held as security the assignment of the Abramson judgment. The intervenor, having a good assignment of the Abramson judgment, was entitled to the money.

It therefore follows that the lower court erred, and that the case must be, and it is hereby, reversed.—Reversed.

ANDERSON, PARSONS, DONEGAN, HAMILTON, KINTZINGER, STIGER, and SAGER, JJ., concur.